# DECISIONS

OF THE

## SUPREME COURT OF MISSOURI.

### FIRST JUDICIAL DISTRICT,

#### AUGUST TERM, 1842.

---

## WADE v. SCOTT.

1. In an action on a promissory note, given for the price of an article sold the defendant, in case of fraud or breach of warranty, may give evidence, shewing the true value of the article sold, in diminution of the stipulated price.
2. Plaintiff sold to defendant a slave with a written warranty, that he was sound, "with the exception of a small defect in his hands." It appeared that the slave's hands were in such a condition, as to render him almost worthless to the purchaser: Held, that this was such a misrepresentation of the extent and violence of the disease, as amounted to a breach of the warranty, and might be given in evidence, in an action for the stipulated price of the slave, in diminution of such price.
3. The right of counsel to commence or conclude an argument to a jury, depends on the practice and discretion of the circuit courts; and such practice and discretion will not be revised or controlled by the supreme court. (Tompkins, Judge, dissenting.)

Appeal from the Boone Circuit Court.

KIRTLEY for Appellant.

HAYDEN for Appellee.

*Opinion of the Court, delivered by Scott, Judge.*

This was an action, by petition in debt, on a promissory note, executed by Pierce Wade to Isaac C. Scott, for the

44

sum of $625, the price of a slave sold by Scott to Wade.

Wade's defence was fraud, misrepresentation, and a breach of warranty. On a trial, Scott obtained judgment for the amount of the note. It appears from the bill of exceptions, that Scott sold to Wade a slave, with a written warranty that he was sound, with the exception of a small defect in his hands. A very short time after the sale, the slave's hands were in such a condition as to prevent his making any use of them. They had lost their muscular action, and were incapable of grasping any thing. In the opinion of some, so great was the defect in the slave's hands, that he was not regarded as worth any thing. Scott had possession of the slave but a short time before he sold him to Wade, during which, there was evidence going to show that his hands were not in such a state as prevented his doing work. Wade saw the slave's hands before the sale, and examined them; and was told that the injury they had sustained proceeded from cold. The physician who examined the slave's hands after the sale to Wade, doubted whether the defect was real or pretended, they being full and natural in their appearance: and it was not until he had required the slave to use his hands in various ways, that he became satisfied that he was utterly unable to perform any thing with them. There was evidence of an offer to rescind the contract, made by Wade to Scott, some time after the sale.

One of the points presented for determination, is, whether in an action on a promissory note, given for the price of an article sold, a defendant may give evidence, shewing the true value of the article sold, in case of a fraud or breach of warranty, in diminution of the stipulated value of the article. It must be confessed, that this question has been decided in different ways by the courts; and that there is a weight of authority and learning on either side of it, which will relieve a court of any anxiety, in being found either in maintaining or denying the principle. When the authorities are thus divided about a proposition; and when a court will be sustained in taking either course in regard to it, considerations of policy and convenience should determine its choice. It is more reasonable, that when a suit is brought

*In an action on a promissory note, given for the price of an article sold, the defendant, in case of fraud or breach of warranty, may give evidence, shewing the true value of the article sold, in diminution of the stipulated price.*

AUG. TERM. 1842.

Wade v. Scott.

to recover the price of an article, that any reduction of the stipulated price to which the defendant may be entitled, either from a fraud or breach of warranty in the sale, should be made in the action in which the price is sought to be recovered, than that he should be driven to his cross action for a redress of the injury. This course avoids circuity of action. A second suit about the same matter should not be tolerated, where a fair opportunity can be afforded by the first, to do complete justice to the parties. And when individuals are apprised, that this defence will attach to the security they may receive for an article sold, they will be less eager to obtain an advantage in their contracts, than if they are taught that a note when once given must be paid, and the injured party driven to his cross action for redress. Many would submit to the imposition, sooner than redress themselves by a suit, who would readily make a defence, were it permitted in an action for the price of an article, in the sale of which they have been wronged. The better opinion seems to be, that this defence will not be allowed, unless the party relying on it, has previously given his adversary notice that he would insist on it at the trial. In a cross action, the party against whom the defence is used, would be apprised by the declaration of the nature of the demand: and as this defence is substituted for the cross action, he is equally entitled to notice, otherwise he might be surprised. The distinction seems to be well settled, that where the article sold is of any the least value, notice must be given of the defence; but if it is entirely worthless, then, under the general issue, the defendant will be entitled to a verdict, no notice being necessary.

A second point in the case is, whether on a breach of warranty in the sale of an article, where there is no fraud, the vendee can rescind the contract? There is authority for the position, that where a purchaser of an article, having had an opportunity of exercising his judgment upon it, had bought it with a warranty, that is of any particular quality or description, and actually accepted and received it into his possession, can afterwards, upon ascertaining that the warranty has been violated, of his own will, without the consent

of the vendor, return the article, and defeat the payment of the purchase money. Lord Eldon, in the case of Curtis v. Hanney, 3 Espinasse, 87, said, he took it to be clear law, that if a person purchases a horse which is warranted sound, and it afterwards turns out that the horse was unsound at the time of the warranty, the buyer might, if he pleased, keep the horse, and bring an action on the warranty, in which he would have the right to recover the difference between the value of a sound horse, and one with such defects as existed at the time of warranty; or he might return the horse and bring an action to recover the full money paid. This dictum has been adopted by Starkie, in his work on evidence, part 4, page 645; and it is there said, that a vendee may, in such a case, rescind the contract altogether by returning the article, and refuse to pay the price, or recover it back if paid. Upon this the court of King's bench, in the case of Strut v. Bloy, 22, Com. Law R., remarks,—"That it is extremely difficult, if not impossible, to reconcile this doctrine with those cases, in which it has been held, that where the property in the specific chattel has passed to the vendee, and the price has been paid, he has no right upon the breach of the warranty, to return the article, and revest the property in the vendor, and recover the price as money paid on a consideration which has failed; but must sue upon the warranty, unless there has been a condition in the contract, authorising the return, or the vendor has received back the chattel, and has thereby consented to rescind the contract, or has been guilty of fraud, which destroys the contract altogether." Weston v. Dowmes, 1 Doug.; Towers v. Barret 1 Term; Payne v. Whale, 7 East.; Power v. Wells, Cow. The court continues,—"If these cases are correctly decided, and we think they are—and they have certainly always been acted upon,—it is clear, that the purchaser cannot by his own act, unless in the excepted cases above mentioned, revest the property in the seller, and recover the price when paid, on the ground of the total failure of consideration; and it seems to follow that he cannot, by the same means, protect himself from the payment of the purchase money on the same ground." See Wynn v. Thornton, 12 Peters.

This doctrine it will be seen, is predicated on the supposition, that the vendee has accepted the article sold, and that the contract is executed: it is not intended to be applied to cases of executory contracts, as where an article is ordered from a manufacturer, who stipulates it shall be of a certain quality, or that it shall answer a particular purpose; there, if the article is not such as was contracted for, the party may, after giving it a reasonable trial, return it, provided it be done in a reasonable time, and he does no act from which it may inferred he has accepted it. In these cases it cannot so much be said, that the vendee rescinds the contract, as that he refused to enter into it, because the vendor has failed to comply with his engagement.

From the instructions given by the court below, some stress seems to have been laid upon the fact, that Wade had an opportunity, and did examine the hands of the slave before the sale. There is no doubt, that when an article has been inspected before it is purchased, a warranty does not extend to defects which are obvious to the senses. But skill and judgment are often requisite to discover defects in articles offered for sale; and is he who following the dictates of prudence, refuses to rely on his examination, and requires warranty, at last in no better situation than he who purchases without one? It is clear that when an opportunity has been afforded for examining an article before sale, the vendee, if he does not require a warranty, is without redress, unless he can show a fraudulent concealment, or misrepresentation on the part of the vendor; but, although the vendee may have an opportunity of examining an article, yet if he requires a warranty, the vendor is answerable for any defect which is not obvious to the senses; 2 Kent Com., 485–6. The Oneida Manufacturing Society v. Lawrence, 4 Cow., 440. Whether the defect in the slave's hands was greater or not, than that excepted in the warranty was a question for the jury; and if they found it greater, it constituted a breach of the warranty, for which the party was answerable; and advantage could be taken of it in this

Plaintiff sold to defendant a slave with a written warranty that he was sound, "with the exception of a small defect in his hands." It appeared that the slave's hands were in such a condition as to render him almost worthless to the purchaser: Held, that this was such a misrepresentation of the extent and violence of the disease, as amounted to a breach of the warranty, and might be given in evidence, in an action for the stipulated price of the slave, in diminution of such price.

44*

AUG. TERM, 1842.

Wade v. Scott.

action, as has been previously shown; Hanks v. McKee, 2 Littel, 227.

It may be inferred from the instructions given by the court below, that considerable importance was attached to the circumstance, that Wade was apprised of the defect in the slave's hands at the date of the warranty. When a written warranty is made by the vendor, and that warranty is general, or contains a specific exception, with what propriety can evidence be introduced, to show that the vendee was aware of the unsoundness of the article, or of other defects than those excepted, or that the defect excepted was greater than represented to be? Here is a written warranty; its sense and effect are to be ascertained by itself, if evidence of the knowledge of any unsoundness on the part of the vendee is admitted, it must be on the hypothesis, that if the fact is established, then the vendor's responsibility is restricted according to the knowledge of the vendee, without regard to the terms of the warranty; otherwise the evidence is irrelevant. Is it not against a plain principle of law to receive parol evidence, to vary, limit or extend the legal effect of the terms of a written instrument? This doctrine is sustained by the authority of Shackelford v. Gorch, 1, Bibb 583, where it is held, that in an action of covenant, evidence that the defendant knew the article sold, and covenanted to be sound, was unsound, is not admissible.

The right of counsel to commence or conclude an argument to a jury, depends on the practice and discretion of the circuit courts, and such practice and discretion will not be revised or controlled by the supreme court.

As to the point made relative to the defendant's right to begin and conclude the argument to the jury, it may be observed, that there is no doubt of the right of the defendant to begin, when the *onus probandi* lies upon him, notwithstanding the technical form of the pleadings; 1 Starkie, 184. But this is a matter depending on the practice and discretion of the circuit courts. In an argument to a jury, the reply may or may not have had an influence on the verdict. If the verdict is such a one as could not otherwise have been rendered on the law and the evidence of the case, the circuit court would not grant a new trial, although the right to conclude had been denied to him who held the affirmative, and against whom

the verdict was rendered, nor would this court reverse a judgment for such a cause. The circuit courts are enabled to exercise their discretion in such matters more wisely than this court, which has not the means of ascertaining the influence the opening and conclusion of an argument may have had on the jury. This court has gone considerable lengths in the exercise of the right to revise the discretion of the circuit courts. I am not disposed to go farther and multiply the causes for the exertion of this power.

*Opinion, by Napton, Judge.*

I concur in Judge Scott's opinion *generally*, and in reversing the judgment of the circuit court, believing that the question of *notice*, under the general issue, does not arise in this case, inasmuch as the defences were fully set forth by special pleas. I give no opinion on that point.

Judge Tompkins dissenting.