SCROGGIN AND SMITH, Plaintiffs in Error, *vs.* HOLLAND, Defendant in Error.

1. A widow is a competent witness for the interest of her deceased husband's estate.
2. In a suit against the securities on a note given for the price of a slave, a breach of the warranty of soundness may be set up by them in defence, though the warranty was to the principal alone, who is not joined.

### *Error to Pettis Circuit Court.*

The facts are sufficiently stated in the opinion of the court.

*Hayden*, for plaintiffs in error.

I. The widow Brown was a competent witness to prove the unsoundness of the slave, because,

1. She was not interested in the event of the suit; she had received all her dower interest in the estate, and it was wholly insolvent. 2. She was competent, even though interested, and so would her husband have been, under the provisions of the practice act of 1849, had he been alive. See article 25, secs. 1, 2 & 3 of the code. 4 Mo. Rep. 361. *Patterson* v. *McClanahan*, 13 Mo. 507. 3. The facts were such as she acquired a knowledge of, through the medium of her own senses, and not from her husband, and, therefore, the rule which renders a wife incompetent to testify as to the conversation or confidential communications of the husband, does not apply. 7 Vermont Rep. 503-7. 13 Pickering, 445. '11 Mass. 285, 3 Binney, 366. 3 Phillips' Ev. 1555. 1 Strange Rep. 504. 6 East, 194. 1 Greenleaf Ev. secs. 253, 254, 338. 2 Strange, 504.

II. The court erred in permitting the plaintiff to prove that he offered to purchase the slave of Brown, after he had sold him to Brown, and that Brown declined to sell. Brown was under no obligation to sell. He had a perfect right to retain the slave and rely upon the warranty for his indemnity. His declining to sell did not tend to prove that the slave was sound at that time, or at the time of the purchase. Neither did the declarations of Brown, several months after his purchase, that he could sell the negroes for some $500; or $800 more than he gave Holland for them, tend to show that the slave Harris was sound. Brown might have got the slaves for less than the usual price, or they might have risen in value, or some one might have been willing to have given more than their worth in order to own them. Brown had a right to the full benefit of his purchase.

III. The position assumed by the defendant in error in this court, that the Circuit Court did not err in excluding the widow Brown as a witness, because the plaintiffs in error had not laid any foundation for the introduction of the proof they proposed to make by her, is not true in fact or in law. The foundation was laid in the answer, which states that the note sued on was given to secure the price of certain slaves warranted to be sound, and that one of the slaves was unsound, and died of that unsoundness. The defendants proposed to prove this unsoundness by the widow. If she was a competent witness, they had a right to prove by her any link in their chain of testimony, and when she was excluded, it was not necessary for them to complete their proof. They could submit to a verdict against them, and appeal, and have this error corrected.

*Adams* and *Wright*, for defendant in error.

I. No foundation was laid by the plaintiffs in error, in the court below, for any evidence about the warranty of the soundness of the slaves purchased of the defendant in error by Brown. There is nothing in the record to show, and there was no proof below that the note sued on was given for the slaves.

The note was given January 20th, 1850, payable twelve months after date, and the bill of sale was executed February 1st, 1850, and the consideration is expressed to be in hand paid. It is therefore immaterial what the ruling of the court below was, upon the point saved in the bill of exceptions.

II. Even if there was anything to show that the note was given for the slaves, the defence of unsoundness set up by the plaintiffs in error, was inadmissible. The warranty was not only made long after the note was given, but it was made to Brown, and not to the plaintiffs in error. He alone could have maintained an action for the breach of the covenant; and the plaintiffs in error could not deprive him of his right of action on the covenant, by setting up the breach in this case as a failure of consideration.

III. The widow of Brown was an incompetent witness, not only on the ground of her husband's interest, but upon the ground of public policy, which renders the husband or wife incompetent to testify to anything that occurred during the coverture.

IV. Brown's statements that he could sell the slaves for $500 or $800 more than he had paid for them, and his refusal to let the defendant in error re-purchase the slave Harris, are strong evidence that the slave was sound at the time of the sale. But if such evidence did not conduce to prove the slaves sound, in no view of the case could its introduction do the plaintiffs in error any harm.

*Napton*, for same.

I. The husband of Mrs. Brown, if alive, would not have been a competent witness, since he was not merely substantially a party, but the principal party defending the suit. He purchased the negroes, gave his note with Smith and Scroggin as securities, and it is for his benefit the defence of unsoundness is set up. The condition of his pecuniary affairs, at the time of the suit, does not affect the question. The new practice act has not changed the law in this respect, as secs. 2, 3 and 4 of art. 25 of that act show. The general principles of

public policy and sound morality establish that it ought not to be changed.

II. If Brown was not a competent witness, then his wife was not, notwithstanding the dissolution of the marriage by death or divorce. The exclusion of a wife, in such cases, is based upon great principles of public policy, and the new practice act, although abolishing all incompetency arising from mere pecuniary interest, did not and was not intended to abolish this ancient rule of evidence. The text books are full of authorities on this subject. No case can be found, in which a wife has been permitted to testify for her husband, (dead or alive,) where he was a substantial party to the transaction. The case of *Beveridge* v. *Minter*, 1 Carr. and Payne, 364, is a nisi prius decision, directly contradicted by *Doker* v. *Hasler*, Ry. & Moo. 198, and by the general current of authorities; but, if it were the law, it does not touch this case. The wife in that case was called upon to prove the liability of her dead husband, not to exonerate, and the Chief Justice, putting the whole matter on the ground of interest, let her testify. It is manifest the same judge would have excluded Mrs. Brown in this case.

SCOTT, Judge, delivered the opinion of the court.

This was an action on a note for thirteen hundred dollars, against Smith and Scroggin, securities of James Brown. Brown purchased several slaves of Thomas Holland, the plaintiff, who warranted them to be sound. The note in suit was executed to secure, as it was alleged, part of the purchase money, a portion of it having been paid down, and bore date ten days prior to the bill of sale. The alleged unsoundness of one of the slaves, estimated to be worth seven hundred dollars, was the defence to the action. Brown afterwards died. On the trial, the warranty of the soundness of the slaves, contained in the bill of sale, was read, and some evidence, conducing to show the unsoundness of one of them, at the time of sale, and his subsequent death, was given in evidence to the jury by the defendants, when Mrs. Brown, the widow of James Brown, the

purchaser, was offered as a witness of the unsoundness of the slave. The testimony of this witness was objected to, and the court sustained the objection, and Mrs. Brown was excluded. It was admitted that Brown's estate was insolvent, and that his widow had received from it all to which she was entitled. The plaintiff, after some rebutting evidence, offered to prove that Holland, the plaintiff, proposed to buy the slave alleged to be diseased, and that Brown declined selling him, and stated afterwards, that he had made a good bargain, as he could sell the slaves for some $500 or $800 more than he gave for them. This evidence was objected to, but the court permitted it to go to the jury, to which an exception was taken. There was a verdict for the plaintiff, and a judgment thereupon.

1. The material question in this case is the admissibility of the evidence of Mrs. Brown, to establish the unsoundness of the slave. It is a well established rule, that the husband and wife cannot be witnesses for each other, for their interests are identical ; nor against each other, on grounds of public policy, for fear of creating distrust and sowing dissensions between them, and occasioning perjury. This rule is said to be so important, that the law will not suffer it to be violated, even after the marriage has been dissolved, by the death of one of the parties, or by a divorce. It thus appears, that the grounds of this rule are two-fold—the identity of interest between husband and wife, and public policy—because the admission of such evidence might disturb the harmony of the conjugal state. It is not to be denied, that a disposition has prevailed in some courts to restrict the operation of the rule above stated. But this has been confined to cases in which the widow has been called upon to testify against the interest of her husband, or to disclose communications deemed confidential, or information derived from the society of, and intercourse with her husband's family. All the cases that have been cited and commented upon in the argument, on both sides, are of this latter class. In relation to this class of cases, we adhere to the opinion of Lord Alvanley in *Monroe* v. *Twisleton*, in which it was held,

that a woman, who had been divorced by act of parliament, was not competent to prove a contract made by her husband previously to the divorce. The Judge observed : " To prove any fact arising after the divorce, this lady is a competent witness, but not to prove a contract or any thing else which happened during the coverture. She was at that time bound to secrecy. What she did, might be in consequence of the trust and confidence reposed in her by her husband." The above case, and those expressing contrary views, were reviewed in a late case reported in England, in 43 Com. Law, 232, *O'Connor* v. *Majoribanks.* In this case, the court rejects the distinction between communications which were of a confidential nature and those which were not so. It was said, such a limitation of the rule would very often be extremely difficult of application, and would introduce a separate issue in each cause, as to whether or not the communications between husband and wife were to be considered of a confidential character. It is sufficient, that the communication might have been of a confidential nature. And it was held, that in an action of trover by the personal representatives of a deceased husband, his widow was not a competent witness for the defendant, to prove that with her husband's authority she pledged the goods with him. We concur in the views above expressed, and see the difficulty of distinguishing between communications which are confidential, and those which are not so. It is obvious too, that if husband and wife were conscious that information derived from other sources than those of trust and confidence, could be evidence against each other, means would be resorted to, with a view to prevent, in many instances, information from being so acquired, which would be a source of endless broils and difficulties. The husband would not be willing that the wife should be in a situation to acquire this information. He might use means to prevent her obtaining it, and thus impose restraints which would fill her with mistrust and anxiety. This opinion is sustained by a great weight of authority in the American courts. *Stein* v. *Bowman,* 13 Pet. 219. *Robbins*

v. *King*, 2 Leigh, 142. *Brewer* v. *Ferguson*, 11 Humphreys, 565.

The case now before us is different from those which have been under consideration. In all those suits, the question was, whether the wife should be a witness against her deceased husband's interest, and she was excluded upon the ground of public policy, whose aim is to create and cherish between husband and wife the most boundless confidence, by stamping with a seal of secrecy, which death itself should not break, every transaction which transpired during their joint lives. Here, the wife is offered as a witness for the interest of her deceased husband's estate. She is, then, to be excluded, if at all, by reason of her identity of interest, and not on the ground of any public policy. There is no identity of interest between husband and wife after the death of one of them. In such case the wife is like any other witness, who, being incompetent at the time he acquires a knowledge of the facts about which he testifies, yet is afterwards rendered competent, by the extinction of his interest. After some examination, no case has been found in which the wife, under circumstances like those of the present case, has been excluded. She is now under no temptation to commit perjury for her husband. Her testimony, if contrary to the expectations of those who produce her as a witness, cannot affect the conjugal state. This is said in reference to the disqualification of the wife, resulting from the mere fact of the former marriage. If she has a pecuniary interest, she is disqualified by the common law. But by our late code, an interest in the event of a suit does not disqualify a witness.

In the case of *Coffin* v. *Jones*, 13 Pick. 443, a widow was permitted to testify for the interest of the estate of her deceased husband, and this case is similar to the one now before the court.

We are of opinion, that it plainly enough appears from the record, that the slave alleged to be unsound was a part of the consideration of the note on which this suit was brought.

Moreover, this question was not raised in the court below. The points of objection to the testimony of Mrs. Brown were stated, and this is not one of them. It would be manifestly unjust to allow this exception here, as it has no support in reality.

The refusal of Brown to sell the slave, when a good offer was made him, was evidence open to comment, but was proper for the jury, on the question whether or not the slave was sound at that time. Not that Brown would have sold the slave, had he been unsound, but to show his conduct when the offer was made.

2. The case of *Wade* v. *Scott*, 7 Mo. Rep. 509, shows, independently of the statute, that the breach of warranty of soundness of the slave is a defence to the note on which this suit was brought. The plaintiff, by failing to join the principal or his representative in the suit, cannot deprive the surety of the benefit of a defence, to which he is entitled by the nature of the contract and circumstances in proof. Nor is it an objection to the defence, that the warranty was made to Brown alone. The warranty was a part of the consideration of the note, and in a suit against any party to it, he may show its breach in reduction of the sum sought to be recovered.

The other Judges concurring, the judgment will be reversed and the case remanded.