## AMOSKEAG MANUFACTURING CO. *v.* HEAD.

A verdict is not set aside on the ground that the prevailing party was allowed to open and close, unless it appears that injustice was done.

A question of law, decided at the law term, is not reconsidered in the same case, except on a motion for a rehearing; and such a motion is not seasonably made after a trial of the facts subsequent to the decision.

On the question of the value of a tract of land, evidence of sums paid for damage done by flowing other tracts of land may be excluded, on the ground that, as a matter of fact, its bearing would be so slight or remote that it would be unjust or unreasonable to prolong and complicate the trial by the collateral investigation.

When, on the question of the value of a tract of land, a party offers the testimony of a witness as to the price paid by the witness for another tract, the witness may be required to produce his deed. But it is not error of law to allow him to testify to the price without the deed.

PETITION, by the plaintiffs, for the assessment of the defendant's land damages, under the flowage law, *c.* 20, Laws of 1868. Reported in 56 N. H. 386.

The defendant filed the following paper:—The said Samuel Head protesting that the statutes or acts of the legislature under which the said company claim an assessment of damages, upon the payment of which or under thereof they shall obtain a right to flow his land and appropriate his property to their use, is in violation of *s.* 1 of Art. XIV of the amendments to the constitution of the United States, which provides that no state shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, inasmuch as the use to which the said Head's property is thus to be appropriated is a private use, and not a public use, and protesting that it is not competent for the jury to pass upon the question whether the construction of the mills and canals of said company, and the erection of their said dam, with said flash-boards forming a part of the same, as constructed by said corporation, and the flowing of his land thereby to the depth and extent that the same may or can be flowed or otherwise injured by said dam and flash-boards, is or may be of public use or benefit to the people of this state, or that the same is necessary for the use of the mills for which it is designed, nevertheless expressly admits that if it is competent for the jury to pass upon said questions upon any evidence that can lawfully be submitted to them against his protest, said evidence is to be deemed to have been already submitted against his protest, and the jury to have found in accordance with all the allegations of the petition in all matters relating to the same,

except as to the fact of flowage, and injury and the amount of damages. His land described in said petition, and other land of his, adjoining the same on the south side of the highway mentioned in said petition, are and will be greatly damaged, flowed, and injured by said dam and flash-boards, and all to the damage of the said Head as he says the sum of fifteen thousand dollars.

SAMUEL HEAD,

By his attorneys, C. R. MORRISON and

W. & G. A. LITTLE.

The defendant's motion for the opening and close was denied, subject to exception. The plaintiffs gave evidence, subject to the defendant's exception, of the character and extent of their works, the number of persons employed by them, and generally of the facts stated in the petition. The court having intimated the opinion that the raising of the dam was of public use, within the meaning of the statute, both parties gave evidence as to the damage done the defendant thereby. The defendant again moved for the close; also that the petition be dismissed because the evidence showed only a private use. Both motions were denied, subject to exception. The question of damages was the only question submitted to the jury.

In 1861 the defendant conveyed to the plaintiffs the right to flow his land as high as it would be flowed by the erection of the plaintiffs' new stone dam, which was finished in September, 1871. In 1875 the plaintiffs placed on the new dam flash-boards two feet in height; and it is for the determination of the damage done thereby that this proceeding is instituted.

The defendant put in evidence the deposition of E. A. Straw, taken May 22, 1878, who was general agent of the company from 1852, and had been before that in their service as civil engineer from 1837. In the deposition were the following questions and answers:

*Int. 5.* " Please state whether flash-boards were put upon this last dam by the company and maintained there, and if so what height."

*Ans.* " I think the company purchased the right of several owners, can't say how many, to maintain flash-boards to a certain height on top of this last dam, about two feet—can't say whether there are any inches or not. We have maintained them on the dam since the purchase of this right."

*Int. 6.* " In the Manchester *Daily Union* of Feb. 2, 1875, are lists of person of whom such purchase was made and of the sums paid, which are as follows:

| | Sum paid. | | | Sum paid. |
|---|---|---|---|---|
| 1. J. E. Stearns, | $6,900.00 | 4. | F. C. Stearns, | $225.00 |
| 2. J. M. Webber, | 112.50 | 5. | D. Fogg, | 112.50 |
| 3. Mrs. S. S. Webber, | 337.50 | 6. | Harris J. Poor, | 2,100.00 |

| | | | | |
|---|---|---|---|---|
| 7. Enoch N. Ely, | $3,791.00 | 20. Nath'l Mitchell, | $2,058.75 |
| 8. James P. Ely, | 3,900.00 | 21. Peter Kimball, | 1,064.50 |
| 9. John Harvey, | 2,400.00 | 22. John Prince, | 528.50 |
| 10. Stephen C. Eastman, | 337.50 | 23. Nehemiah Preston, | 975.00 |
| 11. Harrison Mitchell, | 300.00 | 24. Heirs of J. E. Kimball, | 702.50 |
| 12. David A. Kimball, | 1,125.00 | 25. John G. Garland, | 360.00 |
| 13. Wm. R. Eastman, | 630.00 | 26. Sarah P. Martin, | 700.00 |
| 14. Abraham Mitchell, | 738.75 | 27. Alpheus A. Wells, | 150.00 |
| 15. Geo. W. Davis, | 300.00 | 28. Alfred T. Martin, | 1,045.00 |
| 16. Wm. H. Putnam, | 682.00 | 29. J. Thompson, | 5,871.75 |
| 17. Nancy Shirley, | 510.00 | 30. Sylvester B. Chandler, | 262.50 |
| 18. John Shirley, | 5,287.50 | 31. Joseph T. Goss, | 1,336.50 |
| 19. Betsey Goodrich, | 150.00 | 32. J. W. Prescott, | 1,137.50 |

Please state whether the foregoing sums were paid by the company to the persons named for such purchase."

*Ans.* " The persons and sums named are substantially correct. Each case was settled by a separate board of reference agreed upon by the parties, and each case examined and the parties heard upon it as they desired to be, and so far as I know decided and settled upon the report they made, and upon payment of the sums named conveyances were made by deed to the Amoskeag Mfg. Co." Subject to the defendant's exception, the last question and answer were excluded.

In 1856 Daniel Farmer conveyed to the plaintiffs the right to maintain the water to the height of the new stone dam. He died, and his daughter Elizabeth inherited a part of the land. The defendant offered in evidence a deed conveying the right to flow the inherited land as the water was raised by the flash-boards, and a relinquishment of certain claims for unliquidated damages for the consideration of $4,800, which the court excluded, subject to the defendant's exception.

Subject to the defendant's exception, Gault, a witness for the plaintiff, was allowed to testify what he recently paid for a piece of land bounded by the river, located near the defendant's, without producing his deed.

*C. R. Morrison* and *W. & G. A. Little*, for the defendant.

I. If no evidence had been introduced, the plaintiff's petition would have been granted upon an award of nominal damages. The defendant therefore was entitled to the opening and close upon the question of damages, which was the only question passed upon by the jury, and the denial of this right was a grievous wrong, for which the verdict should be set aside. *Railroad* v. *Clapp*, 1 Cush. 559, 563; *Judge of Probate* v. *Stone*, 44 N. H. 593; *Chesley* v. *Chesley*, 37 N. H. 229; *Chase* v. *Deming*, 42 N. H. 279.

II. The excluded testimony of Straw should have been admitted. The company in effect agreed that the rights were worth, and that the company would pay for them, what certain persons named should appraise them at. The evidence comes within the rule, and the reason of the rule, allowing the proof of other sales as evidence of value. *Railroad* v. *Greely*, 23 N. H. 238, 242; *Kingsbury* v. *Moses*, 45 N. H. 222; *March* v. *Railroad*, 19 N. H. 372; *Thornton* v. *Campton*, 18 N. H. 20; *White* v. *Railroad*, 30 N. H. 188, 208; *Folsom* v. *Batchelder*, 22 N. H. 47; *Holderness* v. *Baker*, 44 N. H. 414; *Rochester* v. *Whitehouse*, 15 N. H. 468.

III. The deed from Elizabeth Farmer was given in July, 1875. The flash-boards were not put on until January, 1875. The company, by purchase of her father, acquired the right to flow as they did flow, up to January, 1875. All the claim for "unliquidated damages" which she had to relinquish was the increased flowing from January to July. This was no such difference as to warrant the exclusion of the evidence. It might as well be argued, the question being the value of a horse, that proof of what a similar horse with a bridle or halter on sold for was inadmissible because of the bridle or halter, as the proposed evidence in this case. It is not required that there be an exact and precise likeness. It is enough if the similarity be such that a reasonable inference can be drawn. See cases before cited. Moreover, the sale by Elizabeth Farmer was, in effect, as of January 1, 1875, when the flash-boards were put on.

IV. There was nothing to take Gault's testimony out of the general rule requiring the production of the best evidence. The whole force of the evidence depended upon the question, What was conveyed by the deed? And of this the deed was the best evidence. The deed was in his own custody, and its production should have been required. Morrison Dig. 354, *ss.* 554–558.

V. The defendant still insists upon the constitutional objections as heretofore taken and as stated in papers on file.

*Mugridge*, for the plaintiffs.

I. The petition states certain facts which the statute requires to be stated in such proceedings, and which it was necessary for the plaintiffs to prove, in the first instance, in order to sustain the case. See Act of 1868, *c.* 20, *p.* 152. The paper filed by the defendant does not admit any of those facts, but only asserts that if it be competent for the plaintiff to offer evidence to prove certain parts of them, "said evidence is to be deemed to have been submitted against protest," etc. This was not an admission of the plaintiffs' case, but merely a waiver of formal evidence to sustain those parts of it.

To determine which party is to begin, and, of course, which shall close, consider which would get the verdict if no evidence were

given on either side, and the right to begin, are with the one who would in that way lose his case. *Judge of Probate* v. *Stone*, 44 N. H. 593; *Belknap* v. *Wendell*, 21 N. H. 181. This proceeding is not like an ordinary suit between parties, in which the default of the defendant may entitle the plaintiff to a judgment. It is a statutory proceeding *in rem*, in which the plaintiffs seek to acquire certain rights in the property of the defendant for their own benefit; and for that purpose it is necessary for the plaintiffs, without reference to whether the defendant appears and defends or not, to fully comply with all the requirements of the statute. And those include not only proof of the public use and the necessity of the rights in question, but also of the flowage and the procurement of an actual assessment of the damages so that the plaintiffs can make the payment of them, which is essential to the acquirement of the rights proposed. The plaintiffs had the right to open and close, because, if nothing further had been offered after the paper was filed by the defendant, the case of the plaintiffs would have been incomplete.

II. The evidence with regard to the payment made to other parties was properly excluded. In questions of the value of property, evidence of actual sales of other similar property is admissible. But this does not apply to cases of this character. The value of rights of flowage, and the proper estimate of the damages to be allowed for them, are too entirely dependent on the circumstances of each particular case,—of the varying rights of the parties in the stream, of the extent and nature of the damages, etc.—for the different cases to be regarded as similar, and the amount in one case to be any reliable guide, is another. If such evidence were to be admitted on one side, evidence of the circumstances of each case affecting the amount in it would be admissible on the other side; and thus the trial in one case would practically involve the trial of the different rights and circumstances of the other cases referred to. The prices in the cases referred to were not fixed by the agreement of the parties, but by the award of referees. They were, therefore, merely the opinions of the referees, which were inadmissible. *Low* v. *Railroad*, 45 N. H. 383; *White* v. *Railroad*, 4 Cush. 440. These suggestions also apply in the case of Elizabeth Farmer and Daniel Farmer.

III. The testimony of Gault was properly admitted. *Kingsbury* v. *Moses*, 45 N. H. 222. The deed itself would be only *prima facie* evidence of the consideration paid; and parol testimony would be competent, even as against the deed itself, to prove the consideration actually paid. *Nutting* v. *Herbert*, 35 N. H. 121.

DOE, C. J. It may be doubtful in this case to which party the opening and close would be given by the general rule. *Chesley* v. *Chesley*, 37 N. H. 229. And a failure of justice not being shown as a result of the ruling on this point, the ruling is no cause for a

new trial. *Schoff* v. *Laithe*. 58 N. H. 503; *Fry* v. *Bennett*, 28 N.
Y. 324, 329, 330; *Belt* v. *Raguet*, 27 Texas 471, 481; *Preston* v.
*Walker*, 26 Iowa 205; *Wade* v. *Scott*, 7 Mo. 509; *Reichard* v. *Ins.
Co.*, 31 Mo. 518; *Marshall* v. *Wells*, 7 Wis. 1; *Perkins* v. *Guy*, 55
Miss. 153; Proffatt Jury Trial, *s.* 153. An unfair advantage, sup-
posed to be gained in some jurisdictions by the party having the
close, is a right of presenting argument to which the other party
cannot reply. But in our practice there is no such advantage. If
the party who has not the close ought to be allowed to reply, his
motion for leave to reply is granted. The party having the close
makes the final reply; but he does not gain the advantage of an
unfair trial by confining his adversary to one argument. A fair
trial is the legal right of each party. And such a trial may require
that the party who has not the close should have an opportunity to
answer an argument by which he is surprised, or to offer a sugges-
tion which he inadvertently omitted. *Boardman* v. *Woodman*, 47
N. H. 120, 141–144.

Upon the record containing the paper filed by the defendant, the
evidence introduced by the plaintiffs in regard to the character and
extent of their works, the number of persons employed by them,
and other facts not bearing on the question of damages, was unnec-
essary and immaterial. The defendant's confession, made part of
the record, left for the jury nothing but the question of damages.
But the evidence not being prejudicial to the defendant, its admis-
sion is no cause for a new trial.

The defendant's motion to dismiss because the evidence showed
only a private use, did not raise any other question than the con-
stitutional one decided in this case, 56 N. H. 386. That question
could be raised again in this case only on a motion for a rehearing.
*Carter* v. *Jackson*, 58 N. H. 156; *Plaisted* v. *Holmes*, 58 N. H. 619.
And such a motion would not be seasonably made after the jury
trial, which took place since the decision of that question. *Preston*
v. *T. Ins. Co.*, 59 N. H. 49.

The evidence offered by the defendant, of the sums paid by the
plaintiffs to thirty-two persons for thirty-two rights of flowage,
would be ineffective and immaterial if unaccompanied by other
evidence tending to show the damage done in those cases, and such
a state of facts as would enable the jury to draw a fair inference as
to the value of the defendant's land from the value of the other
tracts. If such other evidence were offered, one question would
be, whether the thirty-two other cases should be opened for trial
in this case. The practice of trying collateral issues has been con-
siderably extended in this state during the last forty years. *State*
v. *Colston*, 53 N. H. 483; *State* v. *Lapage*, 57 N. H. 245, 287, 301,
305; *State* v. *Shaw*, 58 N. H. 73; *State* v. *Gorman*, 58 N. H. 77;
*Hall* v. *Brown*, 58 N. H. 93; *Griffin* v. *Auburn*, 58 N. H. 121;
*Carter* v. *Jackson*, 58 N. H. 156; *Gordon* v. *B. & M. Railroad*, 58
N. H. 396. But how far a trial can justly and reasonably go upon

such issues is often a question of fact. The trial to which parties are entitled is not an endless one, nor one unreasonably protracted and exhausting. There may be a vast amount of evidence, relevant in a certain legal sense, but so unimportant, when compared with an abundance of better evidence easily available, as to be properly excluded. The parties being allowed, upon collateral issues, an equal range, amply sufficient for the purposes of justice, under the circumstances of the particular case, they are not necessarily entitled, as a matter of law, to go further in that direction. The evidence of the sums paid for flowage in the thirty-two other cases, if, as a matter of law, it was not incompetent, might be excluded on the ground that, as a matter of fact, it had so slight or remote a bearing on this case that it would be unjust or unreasonable to prolong and complicate the trial by such an investigation of those cases as would be necessary for obtaining from them any useful information. *State* v. *B. & M. Railroad*, 58 N. H. 410, 412.

The Farmer case might be excluded on the same ground.

The price paid by Gault for his land would not be conclusively shown by his deed. If he had produced it, he could have testified that the consideration was not correctly stated in it. He might be required to produce it. There might be a reason for excluding his testimony as to the price, without the writing. But it being immaterial whether the deed was valid or not, and the question on this collateral subject being what he paid for the land which he and his grantor understood was sold, the production of the paper was not indispensable as a matter of law.

*Exceptions overruled.*

BINGHAM, J., did not sit: the others concurred.