[No. 14445.      Department Two. — August 30, 1892.]

THE STOCKTON SAVINGS AND LOAN SOCIETY, RESPONDENT, *v.* E. E. GIDDINGS ET AL., APPELLANTS.

ACTION UPON NOTE — DEFENSE — PURCHASE OF MACHINE WITH WARRANTY — NON-NEGOTIABLE NOTE PAYABLE TO BANK — COLLATERAL SECURITY — AGENCY OF BANK FOR VENDOR — FAILURE OF CONSIDERATION — RESCISSION — PRINCIPAL AND SURETY. — Where a machine is purchased from agricultural works, with a warranty which has failed, and the worthless machine has been tendered back to the agricultural works, such facts constitute a defense to an action upon a non-negotiable note executed by the purchasers, and made payable to a bank, which receives it as agent of the agricultural works, the note being indorsed by the president of the agricultural works, and held by the bank as collateral security for its indebtedness; and a surety upon such note may avail himself of such failure of consideration and rescission of the contract of purchase, as a defense to the note, when sued upon it by the bank.

ID. — EVIDENCE OF DEALINGS WITH VENDOR — DELIVERY OF NOTE TO AGENT. — In an action upon such note, it is error to exclude evidence of the dealings of the purchasers with the agricultural works, and of the failure of consideration of the note, and the rescission of the contract of sale made with the agricultural works; and such evidence is not objectionable as showing that the note was void for lack of delivery to the agricultural works, the bank having received it as its agent, and it appearing that the note was in fact the property of the agricultural works, and held by the bank only as security.

ID. — EFFECT OF MAKING NOTE PAYABLE TO BANK — NOTICE — SUBJECTION TO EQUITIES — NOVATION. — If making the bank payee of the note is evidence of immediate notice to the makers of the bank's interest in the note, it must also have the effect to place the bank in the position of a payee as to defenses between payor and payee; and the note being non-negotiable, it is subject, in the hands of the bank, to all infirmities and defenses then existing which might have been urged if it were held by the agricultural works, there being no credit by the bank of the amount of the note, and no novation of indebtedness.

ID. — RIGHT OF SURETY — COUNTERCLAIM — RECOUPMENT OF DAMAGES — FRAUD — FAILURE OF CONSIDERATION — RESCISSION. — A surety upon such note, though he cannot maintain a counterclaim, or recoupment of damages for breach of warranty, by way of set-off to the note, nor set up fraud in the sale as a ground of avoiding the contract of purchase or for the recovery of damages, may avail himself of the defense of a failure of consideration, in whole or in part, and of the fact that the sale has been rescinded, on any ground which would authorize the buyer to rescind it, where the suit is between the original parties, and no rights of an innocent holder are involved.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion.

*C. P. Sprague,* and *Nicol & Orr,* for Appellants.

*W. L. Dudley,* and *J. G. Swinnerton,* for Respondent.

TEMPLE, C. — This appeal is from the judgment, and was taken within sixty days after its rendition.

The action is upon a non-negotiable promissory note, made by the defendants first sued, and payable to plaintiff. Since suit was commenced, one of the original defendants, E. Giddings, has died, and the defendant, L. M. Giddings, his executrix, has been substituted.

Several separate defenses are pleaded, or attempted to be pleaded, in the answer. They all deny the allegations of the complaint.

In the second they admit making the note, but deny that it was ever delivered to plaintiff, and aver that they believed, at the time of its execution, that a corporation known as Stockton Combined Harvester and Agricultural Works was the payee named therein, and that neither they or either of them received any consideration therefor, except a promise made by that corporation, which has not been kept or performed.

By the third defense they aver that plaintiff is a corporation, and that at the time of the execution of the note one L. U. Shippee was its president and one of its managing agents, and was also at the same time president and one of the managing agents of the corporation known as the Stockton Combined Harvester and Agricultural Works; that at the same time a partnership, consisting of defendants E. E. Giddings, W. R. Giddings, and one James Sibley, engaged in farming in Tulare County, was solicited by the last-named corporation (which for brevity I will call the agricultural works) to contract for the manufacture of a machine known as the Shippee Combined Harvester and Shippee and Grattan Improvements; that the partners knew nothing of the machine save through the representations of the agents of the corporation, who made certain representations as

to its value and efficiency, which induced the partners to contract for the manufacture of one of the machines, in which contract the corporation warranted that the machine would do good work, and was reasonably fit for the use for which it was purchased. The partners were to pay $1,800 for the machine, and did then pay the sum of $579.33 to the agricultural works; that the machine when delivered failed to perform good work, whereby defendants have been damaged in the sum of $3,000; that plaintiff well knew when it received the note that neither plaintiff nor the agricultural works had ever paid any consideration for the note; that the note was indorsed as collateral security to plaintiff for debts due it from the agricultural works; that such debts had all been paid, and that the other corporation, the agricultural works, was solvent and able to pay all its debts; that E. Giddings signed the note simply as an accommodation to the partnership, and in case of recovery here, the partnership, including Sibley, who did not sign the note, will be held liable for any sum recovered.

In the fourth defense very nearly the same facts are averred, so far as relates to the agricultural works, and the other parties to the note, and that the contract of sale and the note were procured through the fraudulent representations of the agricultural works, and that the machine delivered was of no value whatever for any purpose.

In the fifth defense the same matters are again alleged, but it is charged that the two corporations combined, conspired, and confederated together to cheat and defraud the partners named; that both and each of them made the false and fraudulent representations in regard to the machine which the partners agreed to purchase, relying upon and believing the false and fraudulent representations; that the machine was of no value for any purpose, and that immediately upon discovering this fact, the vendees offered to return the same to the vendor, which then agreed to return the promissory note to the makers, and to repay the amount paid, provided said machine

was not made to work satisfactorily within five days; that the partners, in pursuance of this contract, and the employees of the vendor, for five days then attempted to make the machine work, but wholly failed so to do, and such efforts proved the machine to be wholly valueless; wherefore the partners again offered to return it, but the agricultural works refused to accept it or to return the note or to refund the money, and has ever since refused to accept a return of the machine.

They also set out specially damage suffered in consequence of the fraud and breach of warranty, and ask judgment for a surrender of the promissory note, the refunding of the money, and that the agricultural works be brought in to answer their cross-complaint; that Sibley be permitted to intervene, and for general relief.

The case was tried with a jury. After the plaintiff rested, defendants proved, by the cashier of the bank, and by L. U. Shippee, who was president of both corporations, that the note was deposited in the bank by Shippee and indorsed by him thus: "L. U. Shippee, Pres't S. C. H. and A. Works." The only consideration on the part of the bank was the indebtedness of the agricultural works, and debts thereafter to accrue, — in other words, the overdraft. As long as the note remained there, it was security for any money the agricultural works might owe, an arrangement having been made between the two companies by which all such notes belonging to the agricultural works were to be deposited there to secure the overdraft of the corporation; that Shippee knew that the note was for money due the agricultural works for the harvester. A series of questions were then asked the witness Shippee, by which the defendants attempted to prove all the allegations in their answer; each was objected to as immaterial and incompetent. All the objections were sustained, each ruling was excepted to, and all are brought here for review. In effect, they were: If the note was not delivered to the agricultural works instead of to the bank? If it was not the property of the agricultural works? What were the

terms of the sale? If certain representations were not made and warranties given, and if Shippee did not know at the time of each? If he did not know that the harvester was worthless, and as to the alleged offer to redeliver, and the refusal? What the consideration was? Certain letters written by agents of the bank and also of the agricultural works were offered, tending to prove some of the same matters, but all were excluded.

The questions were put in various forms, and each of the defendants was offered as a witness to prove the facts alleged in defense, but the court declined to receive their evidence, remarking that it intended to exclude all evidence as to dealings between defendants and the agricultural works.

The question is, Was the proposed evidence competent? and if so, was it material?

I cannot agree with the contention that the evidence which defendants attempted to elicit, supposing the questions would have been answered favorably to them, would have shown that the note was void for lack of delivery. The theory of defendants was, that the note was intended for the agricultural works, and was given in payment for the machine. It is admitted that it was sent to Shippee for that corporation, and by him deposited with the plaintiff as collateral security for the overdrafts of the agricultural works. It appears that an arrangement existed between the two corporations, by which plaintiff was to take all the notes of the other as security for overdrafts. Presumably the bank was also to collect the notes. When, therefore, the note was made payable to the bank, it received it simply as agent of the agricultural works, and as collateral security for existing indebtedness and for money thereafter to be advanced. The note was therefore not invalid for lack of delivery.

That the note was the property of the agricultural works, and was held by the bank only as security, sufficiently appears from the testimony of the president and cashier of the bank.

The evidence sought to be drawn out by the questions

which were ruled out would have made the proof more explicit and satisfactory, and should have been admitted. This would not have been to vary or add to the terms of the instrument. It will not be controverted that a contract made in the name of an agent may not ordinarily be shown, either by the principal or the other party to the contract, to be nevertheless the contract of the principal; and the code, in putting the burden upon the payee of a note to disprove the sufficiency of the consideration, throws the door open upon that subject.

It is contended by respondent that the consideration of the note was solely the credits given to the agricultural works. The defendants sought to show that the consideration was not the overdraft, but the purchase of a machine with a warranty, and that the warranty had failed; and the machine was worthless; that the consideration of the note had wholly failed.

This evidence was clearly admissible if material to any issue in the case. That the pleadings are sufficient to raise the question will hardly be disputed, if it be admitted that these defendants are all in a position to raise it.

Sibley, one of the parties to the contract of sale, did not sign the note, and is not a party to this suit. The vendor and warrantor is not a party to the suit. The plaintiff was not a party to the sale. One of the payors in the note, who is also one of the defendants sued, was not a party to the sale, but signed the note merely as surety.

If the surety in his defense can take advantage of the failure of consideration under these circumstances, it is plain that the absence of Sibley from the record is not fatal to the right of defendants to make this defense. This point will therefore be passed. The absence of the agricultural works from the record only raises the question as to what defenses may be urged against the indorsee.

The plaintiff is certainly in no better position than it would be if the note had been given to the agricultural

works and by it indorsed to plaintiff.   I doubt if its position is as favorable as it would have been as indorsee.

If making the bank payee is evidence of immediate notice to the makers of the interest of the bank, it must also have the effect to place the bank in the position of payee as to such defenses as can only be made as against the original payee.   The note, however, is not commercial paper, and it seems to me the bank holds it subject to all infirmities and to all defenses that might have been made if it were held by the agricultural works, not including, of course, possible defenses which might have accrued from subsequent transactions between the payors and the agricultural works, or claims against it subsequently acquired by assignment.

It was shown that the bank did not credit the agricultural works with the amount of the note.   The transaction, therefore, did not amount to novation.

That the surety could not maintain a counterclaim is clear, for he could not bring an independent action upon the warranty, as he was not a party to it.   (*Chase* v. *Evoy*, 58 Cal. 348; *Roberts* v. *Donovan*, 70 Cal. 108.)

It would naturally seem that the liability of a surety could not be greater than that of the principal, and that the agricultural works ought not to be enabled to recover in this way the price of a worthless machine, in violation of its express contract.   But if it be necessary to consider the defense in the nature of a recoupment, it cannot be done.   The difficulties in the way of such a defense are well stated by Judge Selden in *Gillespie* v. *Torrance*, 25 N. Y. 306.

The suit was against the accommodation indorser of a note given for timber sold with a warranty, a breach of which was attempted to be set up in defense.   The learned judge remarks that if the defense be regarded as a failure of consideration, in whole or in part, the surety can undoubtedly urge the defense; but he proceeds to argue that the claim is to recoup the damages for a breach of the contract of warranty; that often the damages might amount to more than the claim, and it

is optional with the vendees, when they are sued for the price, to recoup or to bring an independent action for damages; that (before the code) if he elected to recoup he could not recover for a balance in his favor. He therefore concludes that such damages constitute a counterclaim, and not a mere failure of consideration, and not being due to defendant, he cannot set it up; he cannot elect for the vendee whether to plead it as a defense or bring another action to recover it. If he could, he might bar the right of the parties to the warranty to recover damages for its breach, for there could not be two recoveries; the right would exist where the note of the surety was for only a small part of the purchase price, and would amount to a practical release of the vendor of the greater part of his liability. In conclusion the learned judge says: " In the case which was shown on the trial, there would seem to be a strong equity in favor of the defendant to have the note canceled or reduced, by applying towards its satisfaction the damages which appear to be due Van Pelt for the breach of warranty. It is, however, an equity in which Van Pelt is interested to as great, and possibly to a greater, extent than the defendant, and cannot be disposed of without having him before the court, so that his rights, as well as those of the defendant, may be protected."

There are many other cases to the same general effect; while the cases of *Wade* v. *Scott*, 7 Mo. 509, and *Scroggin* v. *Holland*, 16 Mo. 419, seem to be the other way. The difficulties in the way of this defense, as stated by Judge Selden, seem to me insurmountable, and they are not diminished by the code provision. (Code Civ. Proc., sec. 438.)

This reasoning, of course, applies only to the claim on the part of the defendants of a right to recoup damages for the breach of warranty by way of set-off to the plaintiff's demand. As to the defense of fraud, more may be said. It is sometimes said that fraud vitiates the contract, but ordinarily that only means that a party may

avoid the contract on that ground, but if he does not elect to do so, he is bound by his contract, and in such case the surety cannot set it up as a defense. If the claim be for damages on account of fraud, the surety cannot avail himself of the defense, for the reasons already given.

The surety may always avail himself of the defense of failure of consideration, in whole or in part, and it seems to me it would necessarily follow that he may avail himself of the fact that the sale has been rescinded on any ground whatever which would authorize the rescission. Under our code (Civ. Code, sec. 1786), a breach of warranty entitles the buyer to rescind. In the case of *Gillespie* v. *Torrance*, 25 N. Y. 306, it was assumed that no such right existed. On this point, therefore, that case is not authority here. The answer sets up facts which if true would constitute a rescission, and the questions which were ruled out called for evidence which would have tended to make out such defense.

To such practice I can see no possible objection. If a contract has been canceled as between the original parties, there remains no consideration for the promise of the surety, except in the case of commercial paper which has passed into the hands of an innocent holder. We are not considering here what might be the consequences in another case. This suit is between the original parties to the contract.

It would seem to follow that the court erred in excluding the evidence, as well as in instructing the jury to find for the plaintiff.

I advise that the judgment be reversed and a new trial awarded.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed and a new trial ordered.

McFarland, J., De Haven, J., Sharpstein, J.