CHAUNCEY F. SHULTZ ET AL., Respondents, *v.* BERNARD CHRISTMAN, Appellant.

### December 17, 1878.

1. The assignees of an insolvent banking corporation may maintain an action against a director for damages for loss to the bank occasioned by the fraudulent sale to the bank of its own stock by such director.

2. The right of action being essentially one of property, as distinguished from a personal tort, passes by the assignment, and does not involve the setting aside of the conveyance as in fraud of creditors.   The action may be brought by those representing the bank.

3. Where the action is grounded upon fraudulent acts, and seeks merely to recover damages for the loss suffered, no rescission is necessary; and the measure of damages is the difference between the value of the article as represented and its actual value.

4. Where a rescission is claimed, this must appear by the petition; and the evidence must show an offer to return the property on the part of the rescinding party, unless the property is shown to be worthless.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

HITCHCOCK, LUBKE & PLAYER, for appellant: The creditors of the bank were the parties defrauded, and these assignees, the plaintiffs, do not represent them, and cannot

object on their behalf. — *Hurlbut* v. *Carter*, 21 Barb. 223 ; *Estabrook* v. *Messersmith*, 18 Wis. 545. An assignee cannot avoid fraudulent transfers made by his assignor, nor take the rights of the creditors of the assignor in his charge or control. In this respect he is like an administrator. — *Brown* v. *Finley*, 18 Mo. 375 ; *George* v. *Williamson*, 26 Mo. 190 ; *Merry* v. *Fremon*, 44 Mo. 578. Plaintiffs should have alleged rescission and tender. — *Kimball* v. *Cunningham*, 4 Mass. 502 ; *Conner* v. *Henderson*, 15 Mass. 320 ; *Cook* v. *Gilman*, 34 N. H. 560 ; *Evans* v. *Gale*, 21 N. H. 240. In the absence of prohibition by statute, a corporation may purchase its own stock, hold it unextinguished, and reissue the same. — *Bank* v. *Bruce*, 17 N. Y. 507 ; *Taylor* v. *Miami Ex. Co.*, 6 Ohio, 219 ; *State Bank* v. *Fox*, 3 Blatchf. 433 ; *Williams* v. *Savage*, 3 Md. Ch. 452.

MASON & GORDON, for respondents : The bank had no power to purchase its own stock. — *Gillett* v. *Moody*, 2 N. Y. 479 ; *Talmage* v. *Pell*, 7 N. Y. 328 ; 1 Edw. Ch. 558 ; 4 Ala. 558 ; 15 Johns. 388 ; 2 Cow. 678 ; 5 Conn. 650 ; 3 N. Y. 430 ; 17 Barb. 397. Tender is not necessary to a recovery on a rescission, where the article is worthless. — *Kneedler* v. *Sternbergh*, 10 How. 67.

HAYDEN, J., delivered the opinion of the court.

The plaintiffs are assignees, by virtue of a voluntary assignment under the statute, of the West St. Louis Savings Bank, a corporation created according to the laws of this State. The petition alleges that on February 12, 1876, the bank, being insolvent, made the assignment ; that the defendant was a director of the bank ; and that in December, 1875, with intent to cheat and defraud the bank, he wrongfully obtained from it $1,500 of its moneys by a sale to the bank of fifteen shares of its capital stock, to the damage of the bank of $500, etc. In similar language another fraudulent sale is charged, by which the defendant, with intent to cheat, etc., obtained $500. There was a general

denial; and upon the hearing it appeared that in November, 1875, the bank was obliged to make re-discounts and borrow money to meet depositors' demands, and was then, or shortly thereafter, insolvent; that the defendant was a director and vice-president of the bank, and had twenty shares of its stock, which he was trying to sell. The plaintiffs' evidence tended to show that this stock was put in the hands of a broker, who was unable to sell it at any price, but that Holle, the cashier of the bank, who had at first refused to buy it, bought ten shares of the defendant for $480; that the defendant then sold the other ten shares to one Margenau, a book-keeper of the bank, taking the latter's note for $480; that the next day the defendant, while behind the bank counter, offered this note for discount; that Holle, the cashier, made out a deposit-ticket for $450, which the defendant said he would take for the note, credited the defendant's bank-account with that sum, and took the note; that before the defendant had left the bank, Holle tore up the note and obtained from Margenau, the book-keeper, the certificate for the ten shares of stock. The defendant afterwards asked if it was all right on the books, and was told that "it was all charged up to the bank." It appeared that Holle, the cashier, had been buying stock for the bank, and also for other people, and that for these twenty shares the bank was charged by Holle $1,000, of which the defendant got $930, Holle $30, and two of the bank's book-keepers the rest. The defendant admitted that he had been a director of the bank until he sold his stock. It did not appear that the other directors knew of these transactions. The stock was transferred to the bank. The defendant's testimony tended to show that he sold the first ten shares to Holle in the belief that the latter was buying them for one Hackman, and not for the bank; that he sold the $450 note in good faith to the cashier, and did not know that it was torn up, or the other shares transferred to the bank; that he had

no idea that the bank was insolvent, and that he kept on making deposits as usual; that he had no understanding that the stock should be charged to the bank. The jury found for the plaintiffs upon each count, and there was judgment for $1,023.

It is first contended that a demurrer to the evidence should have been sustained on the ground that by the assignment no right passed to the assignees to annul this fraudulent sale; that the present claim was not among the assets, and was not a " credit or effect " within the statute; that the assignees do not represent the creditors, and cannot object in their behalf. But cases like *Hurlbut* v. *Carter*, 21 Barb. 223, and *Estabrook* v. *Messersmith*, 18 Wis. 545, are not here in point. No corporate franchise is here involved; and this is not an instance of property transferred in fraud of creditors, and a transfer good except as to them. This action, if made out, is that the transfer was bad *inter partes*, and lies in favor of the bank's representatives. It is true that the plaintiffs' second instruction, quoted below, was asked on a different theory; but the question is now as to how the action can be properly maintained.

Whether the right passed by the assignment is another question. This depends, not on the form of the action, but on the nature of the right. We must not confuse the form with the right, the process with the result. If the right is essentially one of property, as distinguished, for example, from a personal tort, the fact that case or trover may lie to secure the right does not prove that it is not assignable under the statute. Suppose that the claim was that the appellant, instead of fraudulently obtaining money of the bank, had by means of a fraudulent purchase obtained goods or specific securities. Trover would lie, the sale being disaffirmed, for the conversion; but it would not then be contended that the securities were not securities of the bank. So in the present case, independently of the mere form of action, the right, being essentially a property right

and belonging to the bank, clearly passed by the assignment. *McKee* v. *Judd*, 12 N. Y. 622; *Foy* v. *Railroad Co.*, 24 Barb. 382; *Sibbold's Estate*, 18 Pa. St. 249; *Jordan* v. *Gellen*, 44 N. H. 424.

It is next insisted that the demurrer should have been sustained as there was no proof that the assignees had rejected these sales or tendered to the appellant the stock-certificates; that this was a prerequisite to any right of action. The general rule is well settled that where a party seeks to rescind a contract he must do so unequivocally and in a reasonable time, and must be able to put the other party in substantially the same position that he was when the contract was made. The rescinding party must offer to return what he has received under the contract, unless it appears that the property is absolutely of no value. This rule is too well established to need the citation of authorities, and is strictly adhered to, as the right of rescission is an exceptional right, and might, without a careful observance of this rule, be most injuriously exercised. The question is here as to the application of the rule. If it applies, the demurrer should undoubtedly have been sustained. But it is possible for the respondent to escape on the ground that he does not seek a rescission. If the action is not here any form of action that implies repudiation of the contract, — as, for instance, trover or replevin for articles parted with, or *assumpsit* to recover back the money, as such, which was paid, — and if the petition does not allege any steps taken towards a rescission, how can it be urged that a rescission is claimed? Upon an examination of the authorities cited in *Cook* v. *Gilman*, 34 N. H. 560, which fully sustain the rule there laid down, it will appear that they are in point only on the theory that the respondents here demand a rescission. But if this suit is grounded upon the fraudulent acts, and seeks merely to recover damages for loss so suffered by the bank, no rescission is necessary. Where a vendee repudiates the contract on the ground of fraud, he should place

the vendor in *statu quo;* but the vendee may retain benefit from the contract and yet sue for damages. Case for deceit does not imply that the article sold is worthless. It may be worthless, and then the vendee may recover a verdict for an amount equal to the price of the article; but, on the other hand, the damage may be much less, and the value of the property retained must of course be considered. In the same way, where there is a warranty, and fraud that would avoid the contract, the action need not be grounded upon the fraud, but may be *assumpsit* upon the warranty. Yet there is no obligation upon the vendee to return the property if he seeks only to recover damages. *Fielder* v. *Starkin,* 1 H. Black. 17; *Buchanan* v. *Parnshaw,* 2 Term Rep. 745; *Kimball* v. *Cunningham,* 4 Mass. 505. As in Compton's case, put by Buller, J., in *Towers* v. *Barrett,* 1 Term Rep. 136, where Compton had bought horses warranted to be five years old, but which proved to be only four, it was held that, as Compton did not return the horses in a reasonable time, he could only recover damages; and the question was what was the difference in the value of horses four and five years old. Suppose that, instead of *assumpsit,* the action had there been case for fraud in selling horses four years old as horses five years old, the measure of damages would have been the same. *Page* v. *Parker,* 43 N. H. 363; 40 N. H. 72. The difference goes only to the form of the action; but where there is no warranty the action must be case, though the ground of the action is damage done to the property rights of the vendee, whether the action is based upon the warranty as such, or upon the fraud. Indeed the ancient mode of declaring was in tort even upon the warranty broken. *Williamson* v. *Allison,* 2 East, 446.

It follows from what has been said that the judgment must be reversed. The case was not put to the jury upon the theory of an action for deceit. The first instruction

seems to imply a rescission of the contract; it certainly does not, nor does any instruction given, present the main question involved, — the question of fraud of the defendant and of injury resulting to the bank therefrom, by which the bank lost money. The second instruction is manifestly wrong, as representing the question to be one involving the rights of the creditors of the bank, when the assignees are not representing the creditors, but the bank. The following are the first two instructions given :—

1. "If, from the evidence, the jury believe that any of the stock mentioned in the petition was sold to the bank under any agreement or understanding between defendant and any employee of the bank, and that said stock was at the time worthless, the jury will find for the plaintiff for the amount paid by the bank therefor, and interest thereon."

2. "If the jury believe from the evidence that the stock mentioned in the petition, or any of it, was in fact sold to the West St. Louis Savings-Bank by the defendant, and was then worthless, then the sale was in fraud of the creditors of the bank, and the jury should find for the plaintiff the amount paid by the bank therefor, and interest thereon."

The position that the bank was insolvent, urged by way of excuse for not rescinding the contract, is of no force. The appellant was entitled to know that a rescission of the contract was claimed, and here the petition gives no warning to that effect. The appellant cannot, without opportunity to join issue or adduce evidence, be deprived of a defence ; nor can the respondents, by the ambiguity of their petition, obtain advantages of which an adherence to the Practice Act would have deprived them. If the action is based upon a rescission of the contract on the ground of fraud or that a purchase of its own stock was *ultra vires* of the bank, the petition should have shown this. As it was,

the case was put to the jury on no consistent theory, and the second instruction is an entire misstatement of the law applicable to the cause.

The judgment is reversed and the case remanded. All the judges concur.