CICERO BROWN, Appellant, v. MARTIN WELDON AND ELIAS S. LANKFORD, Respondents.

**Kansas City Court of Appeals, February 19, 1887.***

1. CONTRACT—NOTE PAYABLE TO A THIRD PARTY—FAILURE OF CONSIDERATION.—Where, at the request of the party with whom he deals, one makes his promissory note, which is to be a partial payment (for work done for him), payable to a third party, who is a creditor of the party with whom he contracts for the work, and it is credited by the payee to such party, in good faith, the maker cannot set up the defence of failure of consideration, as between himself and the party with whom he deals, in defence of a suit upon a note in the name of the payee.

2. ——— WARRANTY OF SOUNDNESS, HOW FAR MODIFIED BY OTHER REPRESENTATIONS.—Although a general warranty that a horse is sound does not usually extend to defects apparent on simple inspection, requiring no skill to discover them, nor to defects known to the buyer, yet if a representation is made, explaining an apparent defect as temporary, the buyer has the right to rely upon the warranty of soundness as to said defect.

3 PRACTICE—PLEADING—RESCISSION OF CONTRACT MUST BE SPECIALLY PLEADED.—The defence that a contract has been rescinded must be specially pleaded, and, unless this is done, evidence of an offer to return the property, which was the subject of the rescinded contract, is not admissible.

4. ——— EVIDENCE—WITNESS, CONTRADICTING OF AS TO COLLATERAL FACTS.—A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. But it is not irrelevant to inquire of the witness whether he has not, on some former occasion, given a different account of the matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony, by contradicting him.

5. ——— ——— FAILURE OF CONSIDERATION, WHAT CONSTITUTES.—A total want or failure of consideration may always be insisted on,

---

* NOTE.—Certified copy of this opinion was not delivered to me until December 3, 1887.—REPORTER.

as a complete answer to an action on an executory contract, as between the parties to the contract, and if a chattel be of no value to any one, it cannot be the basis of a bargain; but if it be of any value to either party, it may be a good consideration for a promise, and if the property in this case was (although worthless for the purpose for which it was sold and bought) of any value whatever, there was not a want or failure of consideration for the notes given for the property here. Where, then, the purchaser gets the specific chattel which he intends to buy, and the chattel is of some value, there is neither a total nor partial want or failure of consideration. But if there were a warranty, and a breach thereof, by reason whereof the buyer was damaged, he might set up these damages by way of counter-claim. (PHILIPS, P. J., dissents).

6. ——— ——— DEFENCE SETTING UP DAMAGES FOR BREACH OF WARRANTY.—In ordinary cases of breach of warranty, both contracts remain binding to their full extent, and where recoupment is allowed, damages for a breach on one side are set off by like damages on the other side. The cross-claims arising out of the same transaction compensate one another, and the balance only is recovered. And where special or consequential damages are not asked, and where the warranty and the fraud or deceit are in respect of the same particulars, the measure of damages is the same; and that measure of damages is the difference between the actual value of the article at the time of the sale and what it would have been had the article been as it was warranted or represented to be. (Overruling *Voss v. McGuire*, 18 Mo. App. 482).

7. ——— CAUSE CERTIFIED TO SUPREME COURT.—Judge Philips being of opinion that the views expressed in the foregoing opinion are in conflict with certain decisions of the Supreme Court, the cause is certified to that court for its final determination.

APPEAL from Daviess Circuit Court, HON. CHARLES H. S. GOODMAN, Judge.

*Reversed and remanded.*

*Cause certified to Supreme Court.*

Statement of case by the court.

The plaintiff brought suit against the defendants, upon a promissory note for five hundred dollars, executed by them, payable to the plaintiff in one year from date. Afterward the plaintiff brought suit against the defendants upon another promissory note, executed by

the defendants for the same amount, payable to the plaintiff two years from date. After the institution of the second suit, the two cases were consolidated, on the motion of the defendants.

The answer was in three counts. The execution of the notes in suit was admitted. In the first count, it was alleged that the defendant, Weldon, purchased for stud purposes, from one Christ (Christ knowing the purposes for which the purchase was made), a certain jack, called, by Christ, "John Gooding," and a certain stallion, called, by Christ, "Gambetta"; that Christ was the owner of the jack, and was the agent of the firm of Virgin & Brown (said Brown being the plaintiff in this suit) in the sale of the stallion; that the notes in suit and one other note, of the same date, and for the same amount, viz.: five hundred dollars, were executed and delivered to Christ, in payment for the jack and stallion, the notes being executed by the defendant, Weldon, as principal, and by the defendant, Lankford, as his surety, and being all payable to the plaintiff's order; that Christ warranted said stallion and jack "to be sound, healthy, and sure foal-getters, and that said stallion was an imported horse and registered, as to pedigree, as an imported horse, in the American Stud Book, and named therein Gambetta"; that there was a breach of the warranty in each and every particular thereof, by reason of which the defendant, Weldon, was damaged in the sum of fifteen hundred dollars. The prayer for relief was that so much of said damages as would satisfy the plaintiff's demand be recouped against said notes, and that defendant, Weldon, have judgment for the excess thereof, and for costs.

The second count contained the same averments as to the sale of the jack and stallion by Christ. In said count it was then alleged that the said Christ falsely and fraudulently represented the stallion and jack to be such in every respect as he was alleged in the first count to have warranted them to be; that said representations

were false, in each and every particular, as Christ well knew at the time he made them; that the defendant was induced by said representations to buy said stallion and jack; that, in attempting to cure the stallion and jack, the defendant, Weldon, had expended large sums of money, and had devoted much of his time, to his great damage; that, by reason of all which, said Weldon was damaged in the sum of fifteen hundred dollars. The prayer for relief was the same as in the first count.

The third count was the same as the second count, except there were no allegations concerning damages, incurred in attempting to cure the stallion and jack, and that it was alleged that, by reason of the things and matters therein set out, the stallion and jack were utterly worthless, for the purposes for which they were bought, in consequence whereof there was a total failure of consideration. The prayer for relief was that the defendants be permitted to go thence with their costs.

To the answer, the plaintiff filed the following reply: "Plaintiff denies each and every allegation and statement contained in defendants' amended answer, filed October 10, 1883, save and except he admits that defendants made three notes, payable to plaintiff as alleged in the answer; and that said notes were made on the account of the sale to said Weldon of a stallion and jack; and that, in selling said stallion, Christ was acting as agent of the firm of Brown & Virgin, and that Christ was owner of said jack."

["For further reply, plaintiff says: That, at the time said sale was made and said notes executed, said stallion was worth one thousand dollars, and said jack was worth five hundred dollars; that said Christ, at said time, was indebted to Virgin & Brown in the sum of nine hundred dollars, for a stallion before that time sold and delivered by said firm to said Christ, at his request; that said Christ proposed to deliver all of said notes to the plaintiff, if the firm of Virgin & Brown would allow all above the value of the stallion, to-wit, five hundred

dollars, as a credit on his indebtedness to said firm; that said firm accepted said proposal, and, on the nineteenth day of November, 1880, gave said Christ credit on his account for five hundred dollars ; and said Christ, on said day, for the consideration aforesaid, delivered all three of said notes to plaintiff ; that neither the said plaintiff, nor the said firm, had any knowledge or information of any of the matters alleged in the answer of the defendants as defences to said notes." ]

That portion of the reply contained between the brackets was, on motion of the defendants, stricken out, as constituting no defence to the new matter pleaded in the answer. The evidence was conflicting. The evidence introduced by the defendants tended to prove the breach of warranty and the fraud and deceit, as pleaded in the answer. The court gave the following instructions for the defendants :

"1. If the jury find, from the evidence, that the notes in suit were given by the defendant, Weldon, as a part of the purchase price of the horse and jack in proof, and that the defendant, Weldon, purchased said horse and jack from Philip Christ, whether as his own or as agent for others, and that, at the time of such purchase, said Christ represented said horse to be named Gambetta ; to be an imported Norman horse, registered, as to pedigree, in such name, in the American Stud Book ; that he was sound and healthy, except for sore feet, and that such sore feet were produced by a nail wound, then recently received, and a sure foal-getter ; and that said jack was sound and healthy, and a sure foal-getter; and if the jury, also, believe, from the evidence, that the defendant, Weldon, purchased said horse and jack, relying on said representations of said Christ as true ; and if the jury further believe, from the evidence, that said representations were not true, and were known to be untrue by said Christ when he made them ; and if the jury should also believe, from the evidence, that the said horse and jack were wholly worthless, for the purpose

for which the defendant, Weldon, purchased them, then the jury ought to find for the defendant, although they may believe that such horse and jack were of some value for another or different purpose."

"2. If the jury believe, from the evidence, that the notes in suit were given by Weldon, for part of the purchase price of the horse and jack in proof; that said horse and jack were purchased from said Christ, who sold them, either as his own, or as agent for others, and that, at the time of such sale, said Christ warranted said horse to be an imported Norman horse, registered, as to pedigree, in the American Stud Book, by the name Gambetta, and that he further warranted him to be sound and healthy, and a sure foal-getter; and also warranted said jack to be sound and healthy, and a sure foal-getter; and the jury further find that said horse was not registered as to pedigree, in the American Stud Book, by the name Gambetta, and that said horse and jack were not sound and healthy, and sure foal-getters, but that said horse was unsound, partially blind, and permanently diseased in his feet and eyes; and that said jack was permanently diseased and disordered; and if the jury further find that said horse and jack were not, either of them, of any value, for the purpose for which the defendant, Weldon, purchased them, then the jury ought to find for the defendants, upon their plea of failure of consideration."

The court refused to give the following instructions, asked by the plaintiff:

"5. A general warranty of the soundness or quality of an article sold to one who has seen and examined such article, does not include or cover defects or blemishes which are known to the purchaser, or which are open and visible to a person of ordinary skill and intelligence, at the time of the sale."

"13. If the jury find from the evidence that Christ, at the time of selling the stallion, warranted that the stallion was an imported Norman stallion, and duly regis-

tered in the Norman Stud Book, and they should further find that the stallion was an imported Norman stallion, and entitled to be registered in the Norman Stud Book, but that, in fact, he had not been registered in such book, then the jury may allow, as damages for the breach of said warranty, what it would have cost Weldon to have had such stallion registered in such Norman Stud Book, provided he could have had him duly registered."

The jury found for the defendants, and the plaintiff has appealed.

CROSBY JOHNSON, for the appellant.

I. (1) Christ's representations subsequent to the sale were mere hearsay, and not admissible against the plaintiff. *Scovill v. Glasner*, 79 Mo. 449 ; *Coble v. McDaniel*, 33 Mo. 363 ; *Caldwell v. Garner*, 31 Mo. 131. (2) The declarations of a witness are not admissible, except by way of impeachment. *Fanny v. State*, 6 Mo. 122 ; 1 Greenl. on Evid., sect. 124. (3) A witness cannot be cross-examined as to any fact which is collateral or irrelevant for the purpose of contradicting him by other evidence. 1 Greenl. on Evid., sect. 449 ; *Lohart v. Buchanan*, 50 Mo. 201 ; *McKern v. Calvert*, 59 Mo. 243 ; *Iron Mountain Bank v. Murdock*, 62 Mo. 70 ; *Washington v. State*, 63 Ala. 159. (4) Christ's declarations related to an irrelevant and collateral matter and defendants were concluded by his answer in regard to it. 1 Greenl. on Evid., sects. 52, 449, 462 ; *Harrington v. Lincoln*, 2 Gray, 133 ; *Howard v. Patrick*, 43 Mich. 121. (5) Testimony to impeach a person not yet called as a witness cannot be admitted. *People v. Whitson*, 43 Mich. 419.

II. As the answer pleaded no tender, the evidence should have been confined to the issues. *Galbreath v. Moberly*, 80 Mo. 484. A party can only recover or defend on the case made by his pleadings. *Moffatt v. Conklin*, 35 Mo. 453 ; *Glass v. Gelvin*, 80 Mo. 297.

III.   Defendants could not rescind without restoring consideration.   *Estes v. Reynolds*, 75 Mo. 563. Right of rescissions must be promptly exercised.   *Key v. Jennings*, 66 Mo. 356 ; *Estes v. Reynolds*, 75 Mo. 563.

IV.   Rescission as a defence must be specially pleaded.   *Riggins v. Railroad*, 73 Mo. 598.

V.   The measure of damages for breach of warranty, or erroneous representations, is the difference between the actual value of the thing sold and its value if it had been as warranted or represented.   2 Schouler on P. P. [1 Ed.]  611, 615 ;  *Courtney v. Roswell*, 65 Mo. 196 ; *Walls v. Gates*, 4 Mo. App. 1 ;  *Morse v. Hutchens*, 102 Mass. 439 ; *Muller v. Eno*, 14 N. Y. 597 ; *Moulton v. Scruton*, 39 Me. 287 ; *Perley v. Balch*, 34 Am. Dec. 56 ; *Cooper v. Schlesinger*, 111 U. S. 148 ; *Weybieck v. Harris*, 31 Kan. 92 ;  *Basset v. Brown*, 105 Mass. 558 ; *Morse v. Brackett*, 98 Mass. 205.

VI.   A general warranty will not be held to apply to known and obvious defects. 2 Schouler's P. P. [1 Ed.] 350, and cases cited ;  *Thompson v. Botts*, 8 Mo. 710 ; *Lindsay v. Davis*, 30 Mo. 406.

VII.   The defendants having made their notes for the price of the jack, payable to Brown, are not entitled to a deduction because of any unsoundness of the jack. *Glasscock v. Rand*, 14 Mo. 550 ; Daniels on Neg. Inst., sect. 276 ; *Smith v. Brown*, 63 Me. 139 ;  *Aldrich v. Stockwell*, 9 Allen, 45.   (1) The measure of damages for non-registry of the stallion was the cost of registration. *Douglass v. Stephens*, 18 Mo. 362 ; 2 Greenl. on Evid., sect. 261.   (2) The measure of damages as to the alleged deceit is incorrectly stated.   *Anslyn v. Frank*, 8 Mo. App. 242 ; *Schultz v. Christman*, 6 Mo. App. 338 ; *Stiles v. White*, 11 Metc. 356.

No brief for the respondents.

HALL, J.—That portion of the reply struck out by the court constituted, so far as it went, a good defence

to the new matter set up in the answer. If Christ was the owner of the jack; if the defendant, Weldon, bought the jack from Christ for five hundred dollars; if the defendants executed their note for said sum in payment of the jack, payable to the plaintiff; if the note was so executed and delivered to the plaintiff under an agreement between Christ, and Virgin & Brown, that they would give Christ credit for the face of the note on an existing indebtedness from Christ to them; if, in consideration of the execution and delivery of said note to plaintiff, Virgin & Brown, in good faith, credited Christ's indebtedness with the amount of said note; and if, at the time at which this was done, neither the plaintiff nor Virgin & Brown knew of the facts pleaded in the answer, then the said facts did not constitute a good defence to an action on the note given in payment of the jack. It would, of course, be otherwise, if the sale was a lumping sale of both the stallion and jack, for the purchase price of fifteen hundred dollars, as an entirety. And, of course, said facts did not constitute a defence to an action upon the notes given in payment of the horse. It has been held that "where, at the request of the party with whom he deals, one makes his promissory note, which is to be a partial payment, for a piece of work to be done for him, payable to a third party, who is a creditor of the party with whom he contracts for the work, and it is credited by the payee to such party, in good faith, the maker cannot set up the defence of failure of consideration as between himself and the party with whom he deals, in defence of a suit upon such note in the name of the payee." *South Boston Iron Co. v. Brown*, 63 Me. 159; see, also, 1 Daniel on Negotiable Instruments, sect. 176, and notes.

If the defendants should prove the facts pleaded in the answer concerning the jack, it would then devolve upon the plaintiff to prove the facts alleged in the reply. Daniel on Neg. Ins., *supra*. It is true that a general warranty that a horse is sound "does not usu-

ally extend to defects apparent on simple inspection, requiring no skill to discover them, nor to defects known to the buyer." 2 Benj. on Sales, sect. 938. But, if Christ represented that the horse's sore foot was produced by a nail wound, then recently received, the defendant, Weldon, had the right to rely upon the warranty, that the horse was sound, and not upon his own judgment, as to any unsoundness, other than that resulting from the injury named by Christ. Benj. on Sales, *supra*, and notes; and to the same effect is *Wade v. Scott*, 7 Mo. 513. The court properly instructed the jury on this matter, and properly refused instruction number five, asked by the plaintiff. As to what it takes to constitute a warranty, the court instructed the jury as requested by the plaintiff. Of those instructions no complaint is made.

There was evidence upon which to base instruction numbered thirteen, asked by the defendant, and it should have been given. If the stallion was an imported Norman stallion, and entitled to be registered in the Norman Stud Book, and if the defendant, Weldon, could have had the stallion so registered for a sum, certain and ascertainable, then that sum was the correct measure of damages for a breach of the warranty that the stallion was thus registered, in the absence, as in this case, of special damages resulting from the breach of said warranty through no fault on the part of said Weldon, in failing to have the stallion registered. Rescission of the contract was not pleaded. Evidence, therefore, of an offer by the defendant, Weldon, to return the horse and jack, was not admissible. Rescission of a contract must be specially pleaded. *Riggins v. Railroad*, 73 Mo. 607.

Declarations made by Christ, subsequent to the sale, as to what Virgin and Brown would do in the premises, were clearly inadmissible, because Christ was not then the agent of the said firm. *Scovill v. Glasner*, 79 Mo. 456. Such declarations were inadmissible for any pur-

pose ; they were not admissible for the purpose of con-
tradicting Christ.    " It is a well-settled rule, that a wit-
ness can not be cross-examined as to any fact, which is
collateral and irrelevant to the issue, merely for the pur-
pose of contradicting him by other evidence, if he should
deny it, thereby to discredit his testimony."   1 Gr. Ev.,
sect. 449 ; *Iron Mountain Bank v. Murdock*, 62 Mo. 70.
" But it is not irrelevant to inquire of the witness,
whether he has not on some former occasion given a dif-
erent account of the matter of fact, to which he has
already testified, in order to lay a foundation for impeach-
ing his testimony by contradicting him."  Gr. Ev. *supra*.
Hence, after the witness Christ had, on his direct exam-
ination, made the statement that the stallion hurt his
foot in Illinois, and that the foot was then sore and
rotten, from standing on manure without proper atten-
tion, it was proper, on cross-examination, for the defend-
ants to lay a foundation for impeaching his testimony,
by asking him if he did not, at certain times and places,
tell certain named persons that the stallion hurt his foot
on a nail on the cars en route from Illinois to Missouri.

What was the proper measure of damages in this
case ?   In determining this question it may be well to con-
sider the character of the defences set up in the answer.
Are those defences founded upon a failure of considera-
tion, or upon a breach of warranty, and fraud, and deceit
in the sale of the horse and jack ?   A total want or failure
of consideration may always be insisted on as a complete
answer to an action, on an executory contract, as between
the parties to the contract.   But what constitutes a total
want or failure of consideration ?  In *Perley v. Balch*
(23 Pick. 283), it was said :   " If a chattel be of no value
to any one, it cannot be the basis of a bargain ; but if
it be of any value to either party it may be a good con-
sideration for a promise.   If it is beneficial to a pur-
chaser, he certainly ought to pay for it.   If it be a loss
to the seller, he is entitled to a remuneration for his
loss."   The rule thus laid down has been approved in

*Johnson v. Titus* (2 Hill, 606.)   It is also approved in 1
Daniel Neg. Ins., sect. 202.   The rule on this subject, as
thus stated by Mr. Parsons :   The consideration of a
note " may be either a gain or benefit of any kind to him
who makes the promise, or a loss or injury of any kind
suffered by him to whom it is made," has been approved
in *Hudson et al. v. Busby* (48 Mo. 36).   In *Wade v. Scott*
(7 Mo. 511), an action upon a promissory note given for
the price of a slave, it was recognized that, if the slave
was of any, the least, value, that is, unless the slave was
utterly worthless, there was not a failure of considera-
tion.   In *Ferguson v. Huston* (6 Mo. 407), which was a
suit upon a promissory note given for the price of a car-
riage bought *for use as a mail coach*, and which had been
manufactured for the purpose of such use, there was a
divided court, Tompkins and Napton, JJ., only sitting.
It was held by Tompkins, J., that unless the carriage
was wórth " nothing at all," there was not a want or
failure of consideration ; and from that proposition
Napton, J., did not dissent.   The ground of difference
between the two judges will be noticed hereafter.

From these authorities it can be clearly deduced
that if the horse or jack was, although worthless for the
purpose for which it was sold and bought, of any value
whatever, there was not a want or failure of considera-
tion for the note or notes given for the one or both of
them, as the case was, which had any value.   Where
there is neither warranty nor fraud in a sale, the pur-
chaser, in an action for the purchase price, cannot insist
on inadequacy of consideration as a ground for reducing
the damages.   *Johnson v. Titus, supra ; Gillespie v.
Torrance*, 25 N. Y. 307.   If in the case at bar there had
been neither a warranty nor fraud in the sale, defects in
the quality and condition of the horse and jack would
have constituted no defence.   Where, then, the purchaser
gets the specific chattel which he intends to buy, and
the chattel is of some value, there is neither a total nor
partial want or failure of consideration.   In this case,

therefore, as the purchaser got what he bought, there was not a *partial* failure of consideration.    We have seen what constitutes a total failure of consideration.

If there were, however, a warranty, and a breach thereof, as alleged in the first count of the answer, by reason whereof the purchaser was damaged, he could, in this action for the price of the warranted animals, set up *those damages by way of counter-claim.*    Prior to the adoption of our code, such damages could have been set up by the purchaser, in such an action, by way of recoupment, to only reduce or extinguish the claim made by the vendor, and not to obtain affirmative relief where the damages exceeded said claim ; but, under our code, in the term, "counter-claim," are included not only what was before known as set-off and recoupment, but, also, something in addition thereto, and now the purchaser can set up said damages as a ground for affirmative judgment where they exceed the claim made by the vendor. *Hay v. Short*, 49 Mo. 142 ; *Gillespie v. Torrance*, 25 N. Y. 300.    Such damages are not founded upon a failure of consideration, total or partial, but are founded upon the contract of warranty, on the sale and the breach thereof ; but, because, without the aid of a statute authorizing it, the damages could, when set up as a defence to an action for the price, only go to reduce or extinguish the claim thus made, the defence, when made, was often called that of a failure, or a partial failure, of consideration.    But the defence, properly speaking, has no relation to a failure of consideration, total or partial.

In Sutherland on Damages (vol. 1, p. 265), it is said : "Some confusion has arisen from treating this defence as one of failure of consideration." In *Ferguson v. Huston (supra)*, it was held, by Tompkins, J., that the damages on account of the breach of warranty could not be set up by way of recoupment, and that the purchaser could make no defence "unless he prove that it [the carriage] *is worth nothing at all.*"    In other words,

that the purchaser could set up the defence of a failure of consideration, but not the defence of a breach of warranty. Napton, J., differed from Tompkins, J., in holding that the purchaser could, by way of recoupment, set up, as a defence, the damages resulting from the breach of warranty, in reduction of the claim made by the vendor, on the principle of avoiding circuity of action. But Napton, J., did not hold the defence maintainable, because it was one of a failure, or a partial failure, of consideration.

The view expressed by Napton, J., was declared the law in *Wade v. Scott* (7 Mo. 509), and, as such, has continued to be in this state to the present time, with the change made by the adoption of our code authorizing an affirmative judgment, as stated above. In the latter case, Scott, J., who delivered the opinion, recognized the distinction between the defence of the failure of consideration and that of a breach of warranty. He said "the distinction seems to be well settled, that, when the article sold is of any, the least, value, notice must be given of the defence (that of a breach of warranty or fraud), but if it is entirely worthless, then, under the general issue, the defendant will be entitled to a verdict, no notice being necessary."

*Gillespie v. Torrance* (25 N. Y. 310) was a suit upon a promissory note given for a part of the price of certain timber. It was said, by Seldon, J., who delivered the opinion of the court, "the argument of the appellant's counsel, to maintain the position that the defence rested upon a failure of consideration, and not upon a claim for damages on a breach of warranty, is very ingenious; but the answer and the proof show that all the timber contracted to be delivered to Van Pelt, and for which the notes were given, was, in fact, delivered, and the real ground of complaint is, that a much larger proportion of it than was shown by the inspector's certificates, upon the faith of which the purchase was made, proved to be of an inferior quality. The law being well

established that such defect of quality, in the absence of fraud or warranty, constitutes no defence to the note, and, there being no pretense of fraud, it follows that the defence, if there is any, rests upon a breach of warranty."

The distinction between the defence of the want or failure of consideration and that of a breach of warranty is further shown by this: The defence of the want of consideration, except in actions upon an instrument *prima facie* importing a consideration, is not new matter, and may be proved under the general issue; but "where suit is brought for goods sold and delivered, or bargained and sold, the defence of a warranty on the sale and a breach thereof is clearly new matter." Pom. Rem. Rights, sect. 709; *Fetherley v. Burke*, 54 N. Y. 646.

In case of fraud in the sale of a chattel, where the purchaser, on discovering the fraud, retains the chattel, and thus affirms the contract, he is entitled to the damages which he has sustained by reason of the fraud. Our remarks concerning the damages on account of a breach of warranty apply with full force to the damages caused by such fraud. The character of the defence setting up damages caused by a breach of warranty in a sale of a chattel may be summed up as follows: "In ordinary cases of breach of warranty, therefore, both contracts remain binding to their full extent, and where recoupment is allowed, damages for a breach on one side are set off by like damages on the other side. The cross-claims arising out of the same transaction compensate one another, and the balance only is recovered." *Gillespie v. Torrance, supra.*

The defences pleaded in the first and second counts of the answer are clearly those respectively of a breach of warranty and fraud and deceit in the sale of the horse and jack. This is true, not only from what we have said, but, also, from the fact that an affirmative judgment is asked against the plaintiff, in favor of the

defendant, Weldon, the purchaser, for the amount of the damages in excess of the claim made by the plaintiff. And it follows, from what we have said, that the third count of the answer which alleges that the horse and jack are worthless for the purposes for which they were sold and bought, does not set up the defence of failure of consideration as distinguished from the other defences mentioned. In other words, there are only two defences pleaded in the answer, those of a breach of warranty and of fraud and deceit, and the defence of a failure of consideration is not pleaded, except only in so far and in the sense that the damages caused by the breach of warranty and the fraud and deceit may reduce or extinguish the claim made by the plaintiff. The third count of the answer adds nothing to the first two counts thereof.

Where special or consequential damages are not asked, and where the warranty and the fraud or deceit are in respect of the same particulars, the measure of damages is the same. *Schultz v. Christman*, 6 Mo. App. 343; *Anslym v. Frank*, 8 Mo. App. 247. And that measure of damages is the difference between the actual value of the article at the time of the sale, and what it would have been had the article been as it was warranted or represented to be. *Walls v. Gates*, 6 Mo. App. 246; *Anslym v. Frank*, *supra*, and cases cited; 2 Suth. on Measure of Dam., 422, and cases cited; *Courtney v. Boswell*, 65 Mo. 199. There was not a total want or failure of consideration, as we have seen, if the horse or jack was of any value for any purpose, although worthless for the purpose for which they were sold and bought. And if the difference between the actual value of the horse and jack, at the time of the sale, and what their value would have been, had they been as warranted or represented to be, was not equal to the claim made by the plaintiff, the damages to which the defendant, Weldon, was entitled, in the absence of special or consequential damages, to which we do not

refer, as the court did not instruct with reference to such damages, did not extinguish said claim. If such difference was not as large as the amount due on the notes, and there was a balance in favor of the plaintiff, he was entitled to recover said balance. It cannot be that, because a chattel is not as represented or warranted to be and is, therefore, worthless for the purpose for which it is bought, the purchaser can retain it, which he has the right to do, without being accountable to the seller for the actual value of the chattel, not to exceed the contract price, of course, if the chattel is of any value for any purpose, and especially if it have a real market value.

In *Voss v. McGuire* (18 Mo. App. 482), decided by this court, it was said that the defence of a breach of warranty is not, properly speaking, a counter-claim, but is that, if it is made in diminution of the price, of a partial failure of consideration; and that such defence does not have to be specially pleaded, but may be proved under the general issue. The question thus decided was not before the court, but, inasmuch as it was clearly decided erroneously we take this opportunity to overrule that case in the respect and to the extent indicated. Ellison, J., concurs in a separate opinion; Philips, P. J., dissents in a separate opinion, holding that the views expressed in the foregoing opinion are in conflict with certain decisions of the Supreme Court.

The result is, that the judgment is reversed and the cause remanded, and that the cause and transcript of the record are hereby ordered to be certified to the Supreme Court, for its final determination, and that until such determination all proceedings upon the judgment of this court be stayed.

### SEPARATE OPINION.

ELLISON, J.—I am fully satisfied with the position taken by Hall, J., with reference to a failure of consideration and a breach of warranty. I agree, also, with

Philips, P. J., in what he says, regarding the constitutional obligation of this court to follow the Supreme Court, regardless of our own individual opinion; such obedience to the constitutional amendment creating this court, is necessary to a uniform administration of the law.

But I do not agree with Philips, P. J., in the opinion that the views of Hall, J., on the question, are in conflict with the Supreme Court. In making this remark, I leave out of view the distinction taken by Hall, J., as to the difference between a failure of consideration, total or partial, and a breach of warranty. His views are correct on principle, but the Supreme Court uses the term, "failure of consideration," interchangeably with damages on a breach of warranty. But these different modes of expression do not affect the question. The only cases involving the question, to which the attention of any of us has been called, are those of *Ferguson v. Huston* (6 Mo. 407); *Wade v. Scott* (7 Mo. 509); *Barr v. Baker* (9 Mo. 850); *Murphy v. Gay* (37 Mo. 535); *Compton v. Parsons* (76 Mo. 455); and *Kerr v. Haymaker* (20 Mo. App. 350).

Before referring to these cases in detail, it may be well to state that in the sale of a chattel for a specific purpose, there is, in the absence of an express warranty, an implied warranty that it is fit for such purpose. And it might be well held (though I do not now pretend to say), that if the sale is for a *specific purpose* with warranty, express or implied, as distinguished from a sale generally, with warranty, and the chattel is not fit for such purpose, though of value for other purposes, the vendee may rescind if he exercises his option in season; but if there is no rescission by a return or offer to return, the vendee will only be allowed damage in diminution of the price, as is stated in Judge Napton's five propositions in 6 Mo., hereafter referred to, in regard to sales by manufacturers. But, conceding the right of rescission, in no event can

the vendee retain property of value and not pay that value.

In *Ferguson v. Huston* (*supra*), Napton, J., lays down five propositions, which are the law to this day. The law, as thus laid down, was approved in each of the cases above mentioned. The fourth proposition might have included with sales of manufactured articles by the manufacturer, sales by sample, as such sales would be governed by the same rule. From these propositions it will be seen that if the breach of the warranty goes to the entire consideration, that is, if the chattel is wholly *worthless for any purpose*, it is a bar to the action without a return, or offer to return. In such case, when the warranty fails, the consideration likewise fails. The consideration fails as effectually as if there was no title. Second, in the sale of a specific chattel (generally) accompanied by a warranty, but without fraud, the title passing *in praesenti*, there can be no rescission, notwithstanding there may be a total breach of the warranty. Authorities *supra;* *Muller v. Eno*, 14 N. Y. 597; *Walls v. Gates*, 6 Mo. App. 242.

This view is also taken by eminent text-writers, and most of the courts of the Union. Benjamin on Sales, sect. 888, and note. Third. If there be a sale, by sample, or of a manufactured article, by the manufacturer, with warranty, the vendee may return the property, in a reasonable time. *Wade v. Scott, supra.* If he does not return it, he may still give in evidence, in a suit against him for the price in reduction of the price agreed upon, the breach of warranty, without resorting to a separate action. *Murphy v. Gay, supra.* In this last case, it will be noticed by the last paragraph of respondent's brief, that he admits the *actual* value of the goods may be recovered, in a suit on the note for the price, though worthless for the purpose of their purchase. Is there any justification for an instruction giving the vendee the case, in an action involving the sale *in praesenti* of a specific chattel, if the chattel was worthless for the purposes

of the purchase, yet of value for other purposes? I think there is not. The case in 6 Mo. was a manufactured article, a carriage to be manufactured for the defendant. It was there held, under the fourth and fifth propositions, that in a sale of a manufactured article, with warranty, by the manufacturer, the contract may be rescinded, and payment of the price avoided, *in toto;* but if not rescinded, the breach of the warranty may be given in evidence as damages, in reduction of the price, without resort to cross action. It was also held, as we have seen, under the third proposition, that there could be no rescission for breach of warranty, in the absence of fraud, in the sale of a specific chattel, without previous agreement to that effect. The expression of the judge, that the vendee would not be "at liberty to rescind the contract *in toto*," is intended, of course, to mean that, while the contract cannot be rescinded, the contract price may be reduced by evidence of damage for the breach of warranty. The case of *Branson v. Turner* (77 Mo. 489), is not in conflict with the case in 6 Mo., and subsequent cases. In that case, as was said in *Muller v. Eno* (14 N. Y. 610), "the contract of sale was executory; the title to the article was to take effect *in futuro*, as where the thing is not present at the time; where there is no opportunity for inspection, and where a future delivery and acceptance to complete the contract is contemplated by the parties. In such case, the rule of *caveat emptor* has no application."

The case in 7 Mo. was a sale of a specific article *in praesenti*, and it was held that there could be no rescission for a breach of the warranty, though evidence of the breach of warranty might be given to show damages in diminution of the price. But if it be a manufactured article, sold by a manufacturer, a rescission may be had in a reasonable time, or if the contract be executory. ·

The case in 37 Mo. was a sale of a manufactured article, sold on order, and while the vendee notified the vendor of the worthlessness of the article, the court

adds that, in order to make defence of total or partial failure of consideration for the note, there need not be a return, or offer to return, the property. This is consistent with, and is an affirmation of, the cases in 6 and 7 Mo. The New York cases cited hold that the defence may be made to diminish the price. The case of *Barr v. Baker* is also cited, but, as I think I will show, that case does not, or should not be taken to affirm the proposition it is sometimes understood to make.

The case in 76 Mo. was the sale of a patent-right device, as appears from the statement, and, whether sold by the manufacturer on order, or was a specific sale *in praesenti*, does not appear. Certain it is that Sherwood, J., considered, as he hardly otherwise could have done, that a patent "water-drawer," worthless as such, was worthless for any purpose, and could, therefore, be rightfully placed under the first proposition, by Napton, J., in 6 Mo. Sherwood, J., cites, in support of his opinion, the case in 37 Mo., and cases cited therein, including the case in 6 Mo.

The case of *Kerr v. Haymaker* (20 Mo. App. 350), was the sale of a manufactured article, on order, which turned out to be of no value for *any* purpose, thus falling under the first proposition in the case in 6 Mo.

In none of these cases is the proposition asserted that, if the article is worthless for the purpose for which it is bought, or warranted, that the entire contract price may be defeated, though the article was of value for other purposes. They evidently maintain the reverse of this. The whole misunderstanding of the rule in this matter has arisen from the case of *Barr v. Baker* (9 Mo. 850). The chattel in that case was a jack, sold *in praesenti*, and warranted as a foal-getter. Witnesses testified, not only that he was worthless as a foal-getter, but was worthless for any purpose. The instructions given by the trial court for either side were squarely under the case in 6 Mo., per Napton, J., and that in 7 Mo., and

the judgment was affirmed under the authority of those cases.

The whole trouble has arisen from the additional remark of the judge that, "if the article which forms a consideration of the note be worthless, for the purpose for which it was purchased, the consideration has *wholly* failed, *although it may be of some value for another purpose.*" This was an inadvertent remark, not pertaining to a decision of the case, and which was, doubtless, not intended to overrule the cases in 6 and 7 Mo., which had just been approvingly cited. The remark has stood for forty years to vex the profession, but, as may be seen by the foregoing cases, has never been sanctioned by the courts. The reverse of that remark is true. If the article is of value for some other purpose, the consideration has not *wholly* failed. The consideration has only failed to the extent of the damage to the vendee by breach of the warranty. But it is said in support of Judge McBride's remark in 9 Mo., that, when one buys for a specific purpose, such purpose is the consideration, and not the article, and, therefore, if the purpose fails so does the consideration, and it may be shown on trial, without a return of the property, to the defeat of the vendor's entire claim.

This position would better commend itself to me, if the vendee only purchased the *use* of the property for the warranted purpose, and only became the owner of the *right to use* the property for such purpose. But by the purchase he becomes the general owner, for the warranted and *all other* purposes. And though the chattel be useless for the warranted purpose, yet it may be equal in value to the contract price for other purposes; in such cases there is no damage unless there should be consequential damages.

If the vendee retains the property, which was the consideration of his promise, he must pay the price, less the damages caused by the breach of warranty. The measure of such damages is the difference between

the value of the chattel if it had corresponded with the warranty, and its actual value.    If the chattel warranted is purchased for five hundred dollars, and is worthless for the warranted purpose, but is yet of the value of five hundred dollars for other purposes, there is no damage, and the vendee must pay the contract price, unless, of course, there be consequential damages.    This necessarily results, from the fact that if there is no rescission the purchaser retains the property, which is of the exact value he has agreed to pay.    Otherwise, as will be clearly seen, he may refuse to pay the price, because of no value for the purposes of the purchase, and yet keep the property, which he may immediately convert into the sum he agreed to pay.    One may buy a stallion for stud purposes, warranted for such purpose ; the animal may be impotent, thereby not filling the purpose of its purchase, but on the turf, or as a work animal, may be of great value.    So one may buy a quantity of grain for seed purposes, warranted for such purpose ; the grain may be worthless as seed, but of the full purchase price value for every other purpose, in every grain mart of the world.    To hold that a party who buys property for a specified purpose, which is worthless for that purpose, though of great value for other purposes, may retain it and yet defeat the price *entire*, would be an intolerable rule, without the countenance of either reason or justice.

### SEPARATE OPINION.

PHILIPS, P. J.—I cannot concur in so much of the opinion by my associate, Judge Hall, as seeks to maintain that the instructions given for defendants asserted error in directing a verdict for defendants, if the jury found from the evidence that the horse and jack were worthless for the purpose for which they were sold and bought, although they might be of some value for some other purpose.

VOL. xxvii—18

I. By the constitutional amendment creating this court it is provided, that "the last previous ruling of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeal." This provision was wisely designed to prevent that confusion and uncertainty likely to arise in the administration of justice in this state, through the conflicting views of three distinct appellate courts widely separate as to their places of sitting. The provision is mandatory. The last holding of the Supreme Court, on any question of law or equity, shall *control this court.* When it has spoken we are absolutely cut off, so far as the establishment of a different principle is concerned, from the field of inquiry as to what the law ought to be, in our opinion, or as to what other courts, of another jurisdiction, have held.

In *Barr v. Baker et al.* (9 Mo. 854), the Supreme Court say: "If the article which forms the consideration of the note be worthless for the purpose for which it was purchased, the consideration has wholly failed, although it may be of some value for another purpose." This pointed and unambiguous language was employed, too, by the court in reference to the sale of a jack, sold as a sure foal-getter ; and it was pertinent to the case under review. No subsequent opinion of the court has overruled this declaration of law ; nor has it ever been criticised, by that court. On the contrary, as late as 76 Mo. 455, in *Compton v. Parsons*, the same principle is recognized and announced, in no mistakable terms. The court, through Sherwood, J., say: "If the 'water-drawer' was worthless for the purpose for which it was purchased, this was a valid defence, as showing an entire failure of consideration, and this, whether defendant returned or offered to return the machine or not, or failed to notify plaintiff of its worthlessness," citing in support *Murphy v. Gay* (37 Mo. 535), in which the case of *Barr v. Baker* (*supra*), is cited approvingly, clearly showing that the rule of law therein announced

was recognized as correct by the Supreme Court, in its last utterance on this question.

Since the opinion in *Barr v. Baker* (*supra*), I undertake to say the rule in question has been almost universally recognized in practice, by bar and bench, in this state.    Whether a wise or unwise one, this court, under the constitutional injunction laid upon it, has no right nor power to directly or indirectly overrule it, as is the inevitable result of the opinion of Hall, J., herein. Viewed with regard to the provisions of our practice_act I hold that the conclusion of the Supreme Court is logical and sensible.    I may concede that text-writers and courts, of high authority, hold that where a vendee purchases a specific article, taking a general warranty as to quality from the vendor, and the article passes to the vendee, the latter cannot rescind, nor maintain the defence to the action to recover the purchase price of a total failure of consideration, provided the article warranted be of any value whatever for any purpose.    I take it, in this state at least, that this rule applies to the instance where a purchaser simply buys a specific article with warranty, in a general way, and not to the instance where he buys a specific article for a *specific purpose*, warranted by the vendor to be suited for such purpose.

I am persuaded that had the statute of 1835, in force at the time when Judges Napton, Tompkins, and Scott held their learned discussions of this question in the cases of *Ferguson v. Huston* ( 6 Mo. ), and *Wade v. Scott* (7 Mo.), contained the provisions of subsequent statutes, respecting the right of a defendant, when sued on a note, to plead the failure of consideration, in whole or in part, they would have found little embarrassment in the solution of the vexed questions considered.    It will be observed from the opinions of Judges Tompkins and Napton, in the former case, that they concurred in the conclusion that the provision in the statute of 1835, authorizing such defence, applied only to actions instituted in justices' courts, and, conse-

quently, could not be considered by them in the deter-
mination of the question involved in an action originating
in the circuit court.   Therefore, they, just as did Judge
Scott, in the subsequent case in 7 Mo., discussed the
question of practice on common-law principles.   These
very decisions were the occasion of the subsequent leg-
islation in the statute of 1845, pages 832-3, sections 19,
20, and 21, which extended the privilege of such a
defence to actions brought in the circuit court, author-
izing the defence of a total or partial failure of consid-
eration to "any action founded upon any specialty, or
other written contract, for the payment of money or the
delivery of property."   This provision, in substance,
has been carried forward into every revision of the
statute.

It was after the enactment of the statute of 1845
that McBride, J., wrote the opinion in *Barr v. Baker*,
concurred in by both Judges Napton and Scott, who
wrote opinions in the cases, *supra*, in 6 and 7 Mo.   This
statute, authorizing the defence of a failure of consider-
ation, means exactly what it says.   When the action is
founded on a note, as in this case, the defendant may
avoid its payment *in toto*, if the consideration has
failed, or to the extent of the failure of such considera-
tion.   What difference can it make, under such a statute,
that the thing which constituted the consideration was
warranted to be what it was represented to be, and what
it, in fact, was not?   The consideration of the note is
the contract of sale, the thing bought on the faith of the
warranty.   That was the inducement to, and sole con-
sideration of, the contract.   This being true, it must
logically and unavoidably follow that, when the thing is
not what it was sold for, and is worthless for such pur-
pose, the consideration has failed ; and the language of
the statute applies, whether the sale be by warranty,
expressed or implied, or procured through fraud.   The
result is the same to the purchaser.   It would, in my
opinion, be a refinement too subtle to meet the liberal

intendment of the practice act, to except from the operation of the statute a sale of a chattel with warranty. No cross action is necessary in such action. If the defendant, when sued for the purchase price, claims that he has been damaged in a sum greater than the consideration of the note, he should resort to a counter-claim, based on the breach of warranty. This, in my opinion, is the plain, common-sense meaning of the practice act, and accords best with its liberal spirit, which is to administer justice with regard to substance, rather than form.

II. As this case is to be reversed on other grounds, I suggest that the pleader reform the prayer of the first and second counts, by omitting that portion respecting a recoupment, so they may stand purely as counter-claims. As the third count of the answer is based solely on the false and fraudulent representations of the plaintiff in making the sale, and contains the only direct plea of failure of consideration, there was not the proper foundation laid for the second instruction given on behalf of defendants based on the breach of warranty. If the defendant, on further trial, would avail himself of the failure of consideration arising on the sale with warranty, he may amend by adding another count based on such warranty.

III. In the eighth instruction, given by the court on behalf of plaintiff, the jury were instructed that:

"If they find that said animals were sold with warranty, or that Weldon was deceived, as hereinafter stated, by false representations of Christ, then Weldon's measure of damages is the difference in value of said animals, in the condition as represented or warranted by Christ for the purpose for which Weldon purchased them, and their condition as shown by the evidence. And, in making up their verdict, the jury should allow this difference, if they find, from the evidence, that said animals were sold with warranty, or that Christ made

false representations as to their quality or condition at the time of sale.''

If this instruction be correct, then the declarations of law made in the two instructions given on the part of the defendants are incorrect, unless it can be maintained that in it the plaintiff intended to assert, and the court to declare, that there was an entire failure of consideration, if the animals were worthless for the purpose for which they were bought. If so, then the plaintiff is precluded from complaining here of an error of the circuit court in giving those declarations for the defendants, as he adopted the error in his own declaration. However viewed, the instruction is so ambiguous in this respect that it should not be given again, as it is in apparent conflict with those given for defendants, in so far as a total failure of consideration is predicable of the worthlessness of the article sold for the purpose for which it was bought.

IV. I concur in reversing the judgment of the circuit court, and remanding the cause, for the error committed in striking out part of the reply, noticed in the opinion of Hall, J., and in giving the instruction numbered two, on behalf of defendants, predicated upon the warranty, as it was not within the allegations of the third count of the answer.

V. Even conceding that the instruction numbered thirteen, asked by plaintiff and refused by the court, announced, as contended by Hall, J., in his opinion, a correct proposition of law, I do not perceive any reversible error in this action of the trial court, inasmuch as the jury found, by the verdict, that the animals were worthless for the purpose for which they were sold. The giving or refusing of the instruction could not have changed the result of the verdict, as it carries with it the conclusion that the jury found the horse and jack were impotent.